James Eddie WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

No. 53800.

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1969.

Wm. G. O'Donnell, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., L. J. Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal from a judgment denying a motion for postconviction relief under Criminal Rules 27.25 and 27.26, V.A. M.R., to set aside a judgment of conviction and allow the withdrawal of a plea of guilty.

An information filed in the St. Louis Court of Criminal Correction charged James Eddie Williams with illegal sale of a stimulant drug. § 195.240, RSMo 1959, V.A.M.S. He was represented by attorney James Bell. Williams pleaded not guilty. Thereafter an amended information was filed charging him with the same offense and alleging four prior convictions of felonies. Williams and his attorney filed a written waiver of trial by jury and consent to trial by the court, but thereafter and on April 25, 1967 both appeared before the court, formally withdrew the plea of not guilty and Williams entered a plea of guilty. In open court the judge extensively examined Williams, in the presence of his attorney, receiving answers from Williams from which the following was made to appear: Williams had discussed with his attorney and understood the consequences of entering a plea of guilty; that by so doing he was admitting his guilt; that he could not at a later time withdraw his plea of guilty; that under both federal and state constitutions he was entitled to be tried by a jury and that a jury would be made available to him if he so desired. Williams conceded and represented that no one had persuaded, threatened or made promises to him to make the plea but that it was his voluntary act; that his attorney was of his own choosing and that he was satisfied with the advice given him by his counsel and with his services; that his attorney had discussed with him the range of punishment that he might be given by the court. He knew the range of punishment, and he understood that the court was not bound by any impressions the defendant or his lawyer may have had; that it was purely within the realm of the court to assess the punishment. The court asked for a statement of the facts in the case and asked Williams to listen as the facts were recited by the assistant circuit attorney, as follows:

"Your Honor, on the evening of November 5, 1966, at about 9:45 p. m., at 4007 Olive, Apartment No. 7, City of St. Louis, Missouri, a patrolman was stopped by a citizen who stated they were selling 'splash' at this location, and they viewed some photographs and so forth at police headquarters. Subsequently other police went to Apartment No. 7 at 4008 Olive and Patrolman Harris knocked on the door and recognized Williams from a photograph

in the Police Department files and that the defendant sold him white powder in tin packets for the sum of a five dollar bill and a one dollar bill, which was marked money; and after that sale was made Officer Harris turned and went out of the apartment and Patrolmen DeOliveras and Eichelberger went in and when they searched this defendant they found the marked five and one dollar bills that Patrolman Harris had been given, that money being the personal property of Patrolman DeOliveras. When they took this drug down to the Police Department Laboratory it was turned over to Cordell Brown and he examined it and it contained the drug amphetamine. I forget which one of the amphetamine drugs it was at this time, but the weight was 4.98 grams of amphetamine that is on the list designated by the Missouri Division of Health to be a stimulant or potent drug."

The court then asked Williams if he had listened to the statement and whether those were the facts, to which the defendant answered "Yes, sir." Defendant's counsel then stated to the court that defendant was addicted to heroin, and asked the court to defer sentencing until a parole investigation could be made. The court asked defendant if he understood that if a presentence investigation was ordered it would be the court's function to grant or deny any application for probation, and that he would give "absolutely no indication that parole would be granted"; that a denial of probation would not be the basis for a withdrawal of the plea of guilty; that his previous conviction of felonies was a consideration in determining whether probation should be allowed "and in most cases if not all it would prevent probation." Williams indicated full understanding of these facts. The court then stated that he wanted it clearly understood that the court was not indicating "in even the slightest degree" that it would grant probation; that four prior convictions would weigh heavily against any probation. The court then ordered a presentence investigation.

On May 9, 1967 Williams wrote the judge a letter asking permission to withdraw his plea of guilty, stating "Reasons too numerous to mention, legally valid, prompt me to seek disposition of this cause through trial as I originally planned." This request was not formally acted upon. On June 5, 1967 Williams was brought before the court, in the presence of his attorney James Bell, and was granted allocution. Both Williams and his attorney indicated that they had no legal cause to show why sentence should not be imposed. The court then sentenced Williams to 7 years' imprisonment [thus accepting the state's recommendation on the extent of the punishment]. Probation was denied but jail time was allowed. Thereupon Williams orally asked leave to withdraw his plea, stating that when he pleaded guilty he was under the impression that he "would have to go to the hospital at Lexington"; that while he was not promised probation he was "led to believe certain things by certain actions." Leave to withdraw the plea was denied.

The motion for postconviction relief was filed in September, 1967 and heard December 18, 1967. At the hearing of this motion Williams testified that his attorney had told him when he started to represent him that "it would not be any bother to get the case dismissed"; that before he withdrew his plea of not guilty his attorney told him he "didn't have a chance going to trial" but that he had a chance, if he pleaded guilty, to get probation and "go to Forth Worth for a cure"; that it was on this basis that he pleaded guilty. He testified that he cooperated with police officers in trying to "clear up the traffic" in amphetamine, and that they promised him that if he helped them "they would do everything they could to help [him] on this rap"; that they would "give [him] a chance to go straight." Williams acknowledged that the court had questioned him thoroughly about the consequences of entering a plea of guilty, but suggested that "usually the judge is not aware of what has happened in regard to 'the stipulation'; and, therefore, I disre-

garded what he was saying at that time as just part of the routine, and I felt that I was supposed to plead guilty in order to gain the benefit of the parole." He further acknowledged that the court did not indicate that he would grant probation; that he knew that his prior record would be considered, and that he recalled the court stating that if probation was denied this would be no basis for withdrawal of the plea, but that he "felt it was just routine"; that he was "more or less fooled into pleading guilty"; that the plea was not voluntary because he "felt there were certain legal questions that could be brought up that had bearing on the case," viz., that his arrest and the search and seizure were illegal and that neither of these questions had been tested by his counsel; that he had a "strong case" because his constitutional rights had been violated.

One of the patrolmen acknowledged that Williams had furnished information to the police and to federal agents. He testified that while he personally made no promise to Williams that he would be put on probation, he did tell Williams that he would notify the circuit attorney's office about anything Williams did to help them so he would know about it, and that the circuit attorney was "aware of everything."

▉▉▉ Citing Criminal Rule 27.25,[1] appellant's first point is that sentence should not have been imposed until appellant's motion to withdraw his plea of guilty had been acted upon. Criminal Rule 27.25 relates to the time for the making of a motion to withdraw a plea of guilty. Orderly procedure would ordinarily dictate the disposition of a motion to withdraw a plea of guilty before sentence is imposed. In this case appellant moved for permission to withdraw his plea on two different oc-

casions. His first effort in this direction was an oral motion made in open court shortly after sentence was imposed. This oral motion *was* acted upon. The second was in the form of a letter to the judge. The failure of the court to formally act on the letter-motion was not error because (1) the court had already ruled on the matter, and (2) appellant waived action thereon. " * * * [W]here the moving party, before the determination of the motion, proceeds in the action in a manner inconsistent with the object of the motion, the latter is waived, as by * * * going to trial on the merits, or by taking some step in the cause, before the hearing of the motion, which renders the motion unnecessary." 60 C.J.S. Motions and Orders § 42. Furthermore, appellant had an opportunity at the time allocution was granted to present to the court any reasons he may have had in support of his letter-motion to withdraw the plea of guilty, but on that occasion both appellant and his attorney answered "No, Your Honor" when asked if they had "any legal cause to show why sentence should not be imposed at this time." If the letter be considered as an application for leave to renew the oral motion, such an application is addressed to the sound discretion of the court, 60 C.J.S. Motions and Orders § 45 c., and by proceeding to impose sentence it may be presumed that the court exercised its discretion not to permit renewal of the motion.

▉▉▉ In any event, the court would have been justified in disregarding the motion, under Criminal Rule 25.06 (e),[2] for the reason that it failed to specify clearly the ground of objection relied upon. "Reasons too numerous to mention, legally valid" are reasons too general to entitle a movant to the attention of the court.

1. "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

2. "Any motion filed under the provisions of these Rules shall specify clearly the defense or grounds of objection relied upon by the defendant and unless it does so it shall be disregarded by the court."

In his second point appellant claims that his plea of guilty was entered under a misapprehension of the facts and in reliance upon representations made to him which were not correct. Conceding that the court, at the time it accepted the plea of guilty, "could not have done more to fully explain to Petitioner what his actions meant and what the consequences might be if he pleaded guilty," appellant nevertheless claims that he was misled under a misapprehension of the facts because he says his lawyer told him that if he pleaded guilty he would have a chance of getting probation and going to Fort Worth for a cure of his drug addiction, and he further counts on the "implication" (which he says arises out of the fact that the court deferred sentence pending an investigation after his attorney pointed out that appellant was addicted to heroin) that he might be sent to a federal institution to be cured. He says that under such circumstances he "well may not have paid too much attention to the words of the Court."

Before accepting the plea of guilty the trial court engaged appellant and his attorney in a patient, thoroughgoing, indeed exhaustive period of questions, explanations, admonishings and warnings with respect to the significance and consequences of entering a plea of guilty. There is not the slightest justification for appellant's admitted failure to pay attention to the words of the court, or for him to conclude that what the judge was saying was "just routine." The court thoroughly disabused appellant of any reasonable notion or expectation that he would be granted probation. The whole tone and tenor of the judge's remarks indicated that probation would not be granted. There was no discussion or intimation that he would or might be given probation for treatment, and any such conclusion drawn by appellant by "implication" from what took place in court is ill-founded and unreasonable. From this record we are convinced beyond any doubt that the trial judge exercised care above and beyond the call of duty to insure that this defendant was thoroughly informed, and that he fully understood what he was doing and the possible consequences of a plea of guilty.

Appellant's third point is that the information is faulty because it failed to negative the exceptions set out in § 195.240, RSMo 1959. It is true that when the exception constitutes a part of the description of the offense sought to be charged the information must negative the exception, and if it does not do so, no offense is charged. State v. Bridges, Mo.Sup., 412 S.W.2d 455. "But where such exceptions are not a part of the statutory definition of the crime, where they are contained in distinct and independent clauses of the statute, or in separate sections, it is not usually necessary either to plead them or to prove them. Such exceptions are pure matters of affirmative defense." State v. DeGroat, 259 Mo. 364, 168 S.W. 702, 705. The persons described in the seven independent clauses or subsections of § 195.240 are "merely those not within the operation and effect of the law denouncing the crime, which is otherwise completely defined without reference to such proviso. That a person comes within the class of persons named in the proviso is a matter of defense and the fact that a given defendant charged with the violation of the section does not come within the terms of the proviso need not be covered by negative averment in the indictment or information." State v. Brown, 306 Mo. 532, 267 S.W. 864, 865. And see State v. Zammar, Mo.Sup., 305 S.W.2d 441, 444.

Appellant's final point is that the court erred in denying the relief sought because under the evidence produced he had a good defense to this action, the defense of entrapment. Having determined that the plea of guilty was voluntarily made it is of no consequence that appellant had a good defense, for by entering the plea he confessed his guilt and waived all de-

fenses. We will, however, consider the point on its merits. On a motion of this nature the movant has the burden of proving that he has a meritorious defense to the offense charged. State v. Parker, Mo. Sup., 413 S.W.2d 489. Appellant testified at the hearing of the posttrial motion that while he was eating dinner in his apartment a girl he knew, Jackie Norse, knocked on the door; that he had known Jackie for 4 or 5 years; that she asked him if he had any amphetamine, and that he sold her some; that Donald Harris, later identified as a police officer, was with Jackie at the time. Appellant made no showing indicating that the officer "lured" appellant into commission of the offense by persuasion, trickery, deceitful representation, or other inducement of such a nature and character as to estop the state from prosecution. This is insufficient evidence, even if believed, to sustain the burden of proof resting upon appellant. It apparently was not believed by the trial court and is discounted on appeal, in view of appellant's concurrence with the recital of facts made in open court by the assistant circuit attorney. The credible facts demonstrate that the officer approached the appellant as a willing buyer and that appellant as a willing seller sold him 4.98 grams of amphetamine for $6. This is not a case of an officer of the law generating in the mind of one who is entirely innocent of any criminal purpose the original intent to violate the law prohibiting the sale of amphetamine, but rather the facts indicate that the criminal intent originated in the mind of the appellant; that appellant was ready, able and willing to commit the offense, and that the officer merely afforded an opportunity for appellant to do so. In such case there is no entrapment. Kansas City v. Plumb, Mo.App., 419 S.W. 2d 457, and cases cited, 459 [4].

Appellant was accorded a full hearing on his posttrial motion. Each of his complaints was given careful consideration by the trial court, which found the issues against him. On this review his complaints, reexamined, have been found lacking in merit. The findings, conclusions and judgment of the trial court are not clearly erroneous. Criminal Rule 27.26 (j).

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.