**Leon A. KING, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 30525.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

Joe D. Butcher, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, C. J., and SHANGLER, DIXON, SWOFFORD, TURNAGE, CLARK and KENNEDY, JJ.

TURNAGE, Judge.

Leon King filed a motion under Rule 27.26 following his plea of guilty to murder in the second degree and sentence of life imprisonment. The court denied the motion without an evidentiary hearing but made findings of fact and conclusions of law. On this appeal King contends the court erred in refusing relief because (1) his guilty plea was involuntary since it was obtained under a promise that his sentence would be from 10–15 years and in no event longer than 30 years; (2) he should have been allowed to withdraw his guilty plea prior to sentencing; and (3) he was entitled to an evidentiary hearing. Affirmed.

On April 26, 1972, King appeared before Judge Henry Riederer and entered a plea of guilty to murder in the second degree. Judge Riederer conducted a thorough and exhaustive examination of King, King's mother and King's counsel before finding the plea was voluntarily entered and accepting the same. During this examination King stated that at age 15 he and two other men entered Joe's Loan Shop. King was armed with a sawed–off shotgun and at least one of the others had a .38 caliber revolver. Their purpose was robbery, and during the course of the crime, King stated that he fired his shotgun and struck the shop owner. King stated that he later learned that the owner actually died from wounds inflicted by the .38 caliber revolver rather than those inflicted by King with the shotgun. Jurisdiction of King was relinquished by the juvenile court and he was charged as an adult.

During the guilty plea, King was represented by Richard Beitling and William Ferguson, Jr. King acknowledged during this hearing that he knew the State was going to reduce the charge from first degree murder to second degree murder before he agreed to plead guilty. He stated no other deal had been made. He stated there had been no threats or promises or offer of reward in order to get him to plead guilty. He also stated there was no prediction as to what sentence he would receive.

King's mother was present in this hearing and also stated that she understood the proceeding and that she thought it was best for King to plead guilty. Mr. Beitling made a statement to the court in which he stated that he had discussed the matter thoroughly with King, his mother and stepfather and it was the decision of those three for King to plead guilty.

King stated that he was satisfied with the services rendered by Mr. Beitling and Mr. Ferguson. At the conclusion of the hearing, the court stated that it found that King had acted voluntarily with an understanding and appreciation of his rights in entering his plea. The consequences of pleading guilty, and that he is, in fact, guilty and accepted the plea. The court stated that it was not pronouncing sentence at that time, but was requesting a report from the State Board of Probation and Parole.

Judge Riederer later died and was succeeded by Judge Marsh. On February 9, 1973, King appeared before Judge Marsh. At this time Judge Marsh conducted a thorough and complete examination of King, his mother and Mr. Beitling, who again appeared as King's counsel. Judge Marsh had a transcript of the guilty plea proceedings before Judge Riederer and went over almost every question in that transcript with King to determine if King remembered the questions and answers.

At the beginning of the proceedings before Judge Marsh, the judge indicated that he was aware that King wanted to reconsider his plea of guilty and King later requested that he be allowed to withdraw his plea. This was followed at the conclusion of the hearing by an oral motion by Mr. Beitling that King be allowed to withdraw his guilty plea before Judge Marsh pronounced sentence. When King advised Judge Marsh that he would like to withdraw his guilty plea, he gave as a reason that the court had promised that his sentence would be no more than 30 years and since Judge Riederer had died, he would just like to change his plea. King's mother also stated that Judge Riederer had told them during the guilty plea hearing that the sentence would not exceed 30 years. Judge Marsh thereafter went over the guilty plea transcript in detail with King. When Judge Marsh asked King if he recalled Judge Riederer asking if there had been any promise of anything in the future and King's response of no, King stated that he remembered such question and answer.

When the court inquired if the answer to that question were true, King responded that it was not. Thereafter, the court continued its interrogation of King with an inquiry about the question Judge Riederer had asked about any prediction as to what sentence he would receive and King's response of no. Judge Marsh asked King if he remembered that question and answer, and King stated he did and the answer was true. Judge Marsh inquired if King recalled Mr. Beitling telling Judge Riederer that he and Mr. Ferguson were ready, willing, and able to commence a trial to defend King, but that King had told him that after consulting with his mother and stepfather he did not wish to have a trial. King also recalled Beitling's statement that it was King's own free choice to plead guilty to murder in the second degree and King told Marsh that statement was true. King also stated he remembered Mr. Beitling telling the court that he had not committed the court or the prosecutor as to what would be done in that case.

King told Judge Marsh that he wanted to withdraw his plea of guilty because he was dissatisfied but that he was not asking to withdraw the plea because he was not guilty. King again admitted to Judge Marsh that he walked into the Loan Shop with a sawed-off shotgun and shot the owner. He admitted he, Steele and Lockett had entered the store for the purpose of robbery.

Judge Marsh carefully interrogated Mrs. Haislip, King's mother, concerning the hearing before Judge Riederer. She agreed, contrary to her earlier statement, that she had not heard Judge Riederer make any statement that the sentence would be 30 years. Thereafter, Judge Marsh interrogated King again and King agreed at that time that no mention of a 30-year sentence had been made before the plea, but that some mention had been made of that sentence after the plea was entered.

Mr. Beitling told the court that he thought there was some confusion because Mr. Ferguson had been a bailiff for Judge Riederer and after the plea of guilty was entered Mr. Ferguson had discussed the King matter with Judge Riederer. It was apparently during this conversation that some mention of a 30-year sentence was made and this information was relayed to King and his mother. Mr. Beitling felt sure this was the source of information on the part of King and his mother about the 30-year sentence. Mr. Ferguson had also died since the guilty plea.

Thereafter, King and his mother both agreed that no mention of a 30-year sentence was made before the plea was entered, but whatever mention of this was made to King came after the entry of the plea.

In his first point King argues the court erred in overruling his 27.26 motion because his plea of guilty was not freely and voluntarily made. His argument develops the reasoning for his statement to be the fact that King entered his plea under the belief that he would receive a 30-year sentence as he told Judge Marsh before agreeing this mention came after the plea. A review of

the guilty plea proceedings before Judge Riederer by this court and the careful review of the transcript by Judge Marsh with King, his mother, and Mr. Beitling, refute beyond any question that King entered a plea without any promise or understanding that he would receive a 30-year sentence. The transcript of the guilty plea hearing reveals fully that King, his mother and his counsel all realized that he was entering a plea of guilty, his sentence would be pronounced later with no prediction as to what that sentence might be. In fact, during oral argument of this case, a question was directed to King's counsel on this appeal, who is different from counsel during the guilty plea and sentencing, as to whether there is anything in the record of the proceedings before Judge Riederer to indicate any understanding with respect to the sentence to be imposed. Counsel's response to this question was:

> None whatsoever. It reads in a very ritualistic manner that no promises had been made. He knew that all that was left for the judge to do was to sentence him and that at the time he could sentence him to anything within the range of punishment allowed by law.

■ There is nothing in the guilty plea record to support the contention now made in the brief and the only source given in the brief is the statement made by King at the sentencing hearing that he thought he would receive no more than 30 years. As previously noted, King later acknowledged this was wrong and no mention of 30 years had been made until after his plea of guilty had been entered. There was no basis on which the court could have found that King's plea was not voluntarily and intelligently entered.

■ King's second point on this appeal is that his motion should have been sustained because Judge Marsh should have allowed him to withdraw his guilty plea. The refusal to allow a guilty plea made before sentencing to be withdrawn is appealable. *State v. Begley*, 534 S.W.2d 632, 634[1, 2] (Mo.App.1976). A 27.26 motion cannot substitute for a direct appeal. *Achter v. State*,

545 S.W.2d 83, 85[2–4] (Mo.App.1976); *Franklin v. State*, 455 S.W.2d 479, 486[13, 14] (Mo.1970). Thus, there is considerable doubt that the refusal of a motion to withdraw a guilty plea may be entertained in a 27.26 motion. However, the parties have not addressed this question and for the purpose of this opinion this court will assume, without deciding, that review of the refusal to allow the withdrawal is proper. Again, the basis for the contention that Judge Marsh should have allowed King to withdraw his plea is the fact that King at one time stated he believed his sentence would not exceed 30 years. As pointed out at length, King made this statement but later acknowledged that he did not know anything of a 30-year sentence until after the plea was entered. Furthermore, the guilty plea transcript completely refutes this idea.

King finally contends the court erred when it refused him an evidentiary hearing. King did have the assistance of counsel on this motion and the court did enter findings of fact and conclusions of law. The court found that the files and transcript refuted the allegations in the motion and an evidentiary hearing was not required.

In *Dykes v. State*, 574 S.W.2d 697, 698[1] (Mo.App.1978) it was stated:

> If the allegations of the motion are refuted by the record of the guilty plea and sentencing proceedings, as the trial court found, then the action of the trial court is correct and should be affirmed. *Smith v. State*, 513 S.W.2d 407 (Mo. banc 1974).

■ The transcript, both of the guilty plea and the sentencing, refuted the contentions made by King that he entered his plea on the promise of a 30-year sentence, and thus, an evidentiary hearing was not required. The decision by the trial court in this case was made on September 25, 1978, and the decision in *Fields v. State*, 572 S.W.2d 477 (Mo. banc 1978) was announced on November 6, 1978. Thus, this case does not fall under *Fields*.

The judgment is affirmed.

WASSERSTROM, C. J., and SHANGLER, SWOFFORD and CLARK, JJ., concur.

DIXON, J., concurs in result in separate concurring opinion.

KENNEDY, J., dissents in separate dissenting opinion.

DIXON, Judge, concurring in result.

I concur in the majority opinion's analysis and result on the issues of the claimed involuntary nature of the guilty plea and the denial of the evidentiary hearing reviewed under Rule 27.26.

Because I do not believe that we can review the action of the trial court in ruling upon a motion to withdraw the guilty plea made prior to sentencing under the procedural device of Rule 27.26, I concur only in the result of the majority opinion, as to the affirmance of the trial court's action with respect to the motion to withdraw the plea.

The majority opinion properly states that the question of the propriety of considering the withdrawal of a plea of guilty before sentence in a proceeding on a Rule 27.26 motion is not without doubt. Cases decided prior to the adoption of Rule 27.26, without discussion or question, reviewed a denial of a motion to withdraw a plea of guilty, before sentence, on direct appeal.[1] Typical of these cases are *State v. Hovis*, 353 Mo. 602, 183 S.W.2d 147 (1944) and *State v. Reynolds*, 355 Mo. 1013, 199 S.W.2d 399 (1947). It was clear under those cases, decided on direct appeals from the conviction had on a guilty plea, that the court was reviewing the denial of such a motion to withdraw the plea as a review of a discretionary act by the trial judge. *State v. Hovis, supra*, and *State v. Reynolds, supra*. Nor was the right to direct appeal from the denial of a motion to withdraw a guilty plea changed by the adoption of Rule 25.04, Rule 27.25, and Rule 27.26. In *State v. Harris*, 420 S.W.2d 325 (Mo.1967), the Supreme Court reviewed a denial of such a motion on direct appeal and applied the principle of *State v. Hovis* and other like cases in finding that the trial court had not "abused" its

discretion in denying the motion. The notion that the denial of the motion is within the scope of direct review has persisted into the recent cases. It was so stated in *State v. Skaggs*, 248 S.W.2d 635 (Mo.1952); *State v. Begley*, 534 S.W.2d 632 (Mo.App.1976); and *State v. Nielsen*, 547 S.W.2d 153 (Mo. App.1977).

Based on this authority, it would seem that the issue of the propriety of the sentencing trial judge's denial of the presentence motion to withdraw the appeal is not reviewable in this Rule 27.26 motion. There are cases which seem to have reviewed the denial of a pre–sentence motion to withdraw the plea under a Rule 27.26 proceeding. *State v. Arnold*, 419 S.W.2d 59 (Mo.1967); *Williams v. State*, 437 S.W.2d 82 (Mo.1969).

Upon careful reading, they do not stand for that proposition. *Arnold, supra* at 60, expressly states that it is a direct appeal "considered as a proceeding to vacate sentence under Criminal Rule 27.26." Cited in support is *State v. Harris*, 382 S.W.2d 642 (Mo.1967), which was a direct appeal case and which nowhere mentions Rule 27.26. *Williams* was a 27.26 proceeding, but the court did not *review* the trial court's action on the motion to withdraw the plea. The only claim was that the trial court had not acted upon the motion which the reviewing court found was not factually supported. The court did not *review* the action of the trial court in *overruling* only the factual issue of a ruling having been made.

*State v. Nielsen, supra* at 158–59, analyzes the direct appeal question and points out that the standard for review of a motion to vacate after sentence is a finding of manifest injustice whereas the standard of review for a motion prior to sentence has not been articulated. The *Nielsen* case, in footnote 10, cites federal cases supporting a standard of "fair and just." *Nielsen*, on the facts there presented, finds the denial of

---

1. There are at least two cases which state that, on direct appeal from a guilty plea, the scope of review is limited to a determination of whether the court accepting the plea had jurisdiction of the subject matter and whether the change is

sufficient. *State v. LePage*, 536 S.W.2d 834 (Mo.App.1976); *Riley v. State*, 588 S.W.2d 738 (Mo.App.1979). Both cases are distinguishable from the instant case since neither involved the review of "trial proceedings" or "hearings."

the motion proper, but does not apply the manifest injustice standard of former Rule 27.25, now Rule 29.07(d), applicable to post–sentence motions.

Thus, as I view these authorities, the denial of the motion to withdraw is reviewable only on direct appeal and not by a proceeding under Rule 27.26. This is but an application of the rule that trial error is not reviewable by means of a Rule 27.26 motion.

This presents the "catch–22" of the unusual facts of this case. The Rule 27.26 findings and conclusions in the instant case are undoubtedly proper under the precept that no hearing is required when the record conclusively refutes the claims made. The record made before Judge Riederer and Judge Marsh conclusively refutes the defendant's claim that his plea was involuntary. At the same time, we may not review the action of Marsh in denying the motion to withdraw the plea, nor can that action be bootstrapped into the involuntary plea situation since that is concluded by the Rule 27.26 allegations and findings and conclusions on that motion.

Were the issue of the denial of the presentence motion properly before us, I would reverse for a new hearing on that motion. I come to that conclusion from a review of transcripts before Judge Riederer and Judge Marsh. Because I believe we cannot review the motion to withdraw the plea, I cannot concur in the result of Judge Kennedy's dissent. I agree with and support the dissent's rationale for the treatment of a motion to withdraw after an involuntary change of judge. The concept is completely consistent with the case law requiring the exercise of judicial discretion in ruling such a motion. As I have stated, I agree that there is not sufficient evidence to refute the voluntary nature of the plea. I believe, however, that in considering the evidence as a whole the trial court should have permitted the withdrawal of the plea. In addition to the fact that the charge had been reduced, other subtle hints in the proceeding before Judge Riederer indicate enough doubt concerning the possibility that an ar-

rangement had been reached with respect to the disposition of this case to influence the trial court in exercising his discretion to permit withdrawal of the plea.

First of all, the proceedings began with the astonishing recital by Judge Riederer that he had talked with the physicians who had examined the defendant pursuant to his proferred defense of not guilty by reason of mental defect. It is difficult to believe that Judge Riederer would have compromised his situation as a trial judge by such conversation if he did not have some foreknowledge that a plea was being entered. This is further buttressed by the fact that Judge Riederer peremptorily and without hearing any evidence overruled the defense of mental disease or defect. It is impossible to tell from the record presented to us whether that defense was filed within the ten days after arraignment provided in § 552.030 RSMo 1969. The respondent's brief informs us that the indictment was filed on the 3rd of December, 1971, and the defense of mental incapacity was filed on December 16. There is no indication of when the defendant was arraigned. Defense counsel further advised Judge Riederer that he had advised the defendant and his mother "that the court has indicated" that it would receive favorably any motion made orally or in writing for an additional examination. It certainly implies some discussion between counsel and court with respect to the disposition of the case.

Additionally, when the defendant was asked of his understanding of the sentence possible under first degree murder and second degree murder, he misstated the punishment of second degree omitting from that punishment the possibility of a life sentence which the court accepted as a "good description" of the sentence possible, which certainly infers that a terms of years had been discussed. When the court inquired of defense counsel concerning whether he had advised the defendant to enter a plea of guilty to second degree, the following significant statement occurred from defense counsel:

"I have come to the conclusion that it is to the best interest of the defendant to enter a plea of guilty to the charge of Murder, in the Second Degree, based on all that we have before the Court, with the mental situation *and, of course, a presentence investigation from the psychological standpoint and family standpoint,* yes, sir."

which likewise indicates some prior discussion of the procedure to be followed at the plea hearing for the statement presupposes the granting of a presentence investigation.

Subsequent to all this preliminary discussion, the questions were asked concerning defendant's understanding of his rights and willingness to voluntarily plead, which counsel has accurately described as ritualistic. Later in the proceedings, at a point when the prosecutor was examining the defendant with respect to his knowledge that despite the fact that the deceased was not killed by the shotgun fired by the defendant that he could be guilty of second degree murder, the court interjected the following comment:

> "THE COURT: Well, the State—you knew that the State was going to reduce this to Second Degree Murder before you agreed to plead guilty, didn't you?"

The whole tenor of that examination convinces me that there was some understanding or arrangement with respect to the entry of this plea.

I further believe that the proceedings taken subsequent to the death of Judge Riederer in the underlying plea hearing are significant. Judge Marsh, who heard the proceedings subsequent to the death of Judge Riederer, came upon the bench with knowledge that this defendant wished to withdraw his plea. Judge Marsh indicated that he understood there was to be a motion to withdraw the plea. Counsel for the defendant did not then undertake to shoulder the burden of supporting the motion. It placed the trial judge in a completely adversary position with respect to the defendant's claim. The entire record consists of a cross examination by the judge of the defendant and his mother. The exercise of

discretion by a trial judge is inconsistent with that procedure, albeit a procedure dictated by the failure of defense counsel to proceed in an orderly fashion.

All of the foregoing convinces me that the trial court should have permitted the defendant to withdraw his plea. As Judge Simeone notes in *Nielsen, supra,* the standard of review is that there must be "manifest injustice" before a *post-sentencing motion to withdraw a plea* can be sustained. A review of denial of a motion to withdraw *prior to sentencing* is a review of the trial court's discretion and should be on the basis of a "fair and just" result. *Nielsen, supra* at footnote 10. A judicial ruling based on the exercise of judicial discretion must on the whole record yield a fair and just result.

KENNEDY, Judge, dissenting.

I dissent. I would reverse and remand with directions to set aside the conviction and sentence and to allow the withdrawal of defendant's plea of guilty, unless the state upon an evidentiary hearing could show an unreasonable delay by defendant in filing his 27.26 motion, resulting in unreasonable prejudice to the state, *Chrisco v. State,* 586 S.W.2d 407, 410 (Mo.App.1979); *United States v. Barker,* 514 F.2d 208, 222 (D.C.Cir.1975), or could show a waiver or consent by the defendant to be sentenced by Judge Marsh. *See People v. McKinley,* 5 Mich.App. 230, 146 N.W.2d 142 (1966).

My view is that the defendant should have been allowed to withdraw his plea of guilty when he came before Judge Marsh for sentencing and requested permission to withdraw the plea. As the majority opinion points out, Judge Riederer, before whom the defendant had entered his guilty plea on April 26, 1972, had died. Sentencing had been deferred pending a pre–sentence investigation. Now on February 26, 1973, defendant came before Judge Marsh for sentencing. At that time King sought to withdraw his plea of guilty. Asked why, he replied: "At the time the court promised no more than 30 years, at the most; but since—well, Judge Riederer died, I'd just like to change my plea." Later in the proceeding, the following exchange took place:

THE COURT: ... Is it your wish, today, to withdraw your plea of guilty because you are concerned, dissatisfied or afraid of the judgment and sentence that I might, today, impose upon you?

THE DEFENDANT: I am making my decision because I am dissatisfied.

THE COURT: You are making your decision because you are dissatisfied with the possibility that I might impose judgment and sentence upon you different from what you may have believed, or been perhaps led to believe might be imposed; is that what you are saying?

THE DEFENDANT: Yes, sir.

When a defendant enters a voluntary plea of guilty, he waives the whole panoply of constitutional rights, and waives any defense he may have.[1] His doing so is in nearly every case upon certain terms and conditions with respect to sentencing. For this reason, there is a tendency in modern cases toward liberality in allowing a defendant to withdraw a guilty plea when his *reasonable* expectations are disappointed, and substantial fairness requires it. *Nagelberg v. United States*, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964); *United States v. Barber*, 514 F.2d 208 (D.C.Cir.1964); *McMahon v. State*, 569 S.W.2d 753 (Mo. banc 1978); *Schellert v. State*, 569 S.W.2d 735 (Mo. banc 1978); *State ex rel. Reece v. Campbell*, 551 S.W.2d 292, 299, *et seq.* (Mo. App.1977).[2] The defendant will have been fairly dealt with, a salutary objective. *Schellert v. State, supra*, at 739[3]; *State v. Cochran*, 60 S.W.2d 1, 2 (Mo.1933). The state, on the other hand, will usually have lost nothing to which it was entitled. *See United States v. Barber, supra* at 222; *Skaggs v. State*, 476 S.W.2d 524, 528 (Mo. 1972). It may still place the defendant upon trial.

In the case before us, the only express term shown by the record was the reduction of the charge from first–degree murder to second–degree murder. This reduced the maximum punishment from death to life imprisonment, and the minimum punishment from life imprisonment to ten years' imprisonment. The permissible punishment range was ten years' to life imprisonment. § 559.030, RSMo 1969.

We have found only two cases on the question, both of them from California. They hold that a defendant is entitled to be sentenced by the same judge before whom he enters his guilty plea. In *People v. Arbuckle*, 1978, 22 Cal.3d 749, 159 Cal.Rptr. 778, 587 P.2d 220, the court said, 587 P.2d at 224–225:

> As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea.

In *People v. Ray O.*, 158 Cal.Rptr. 550, 551 (Cal.App.1979), the court said:

> We see no reason for differentiating between adults and juveniles in these circumstances. We hold that the *Arbuckle* rationale applies to juveniles. In the absence of clear waiver, whenever a juvenile enters a plea bargain before a judge he has the right to be sentenced by that same judge. Ray O. is entitled to be sentenced by the same judge before

1. In the present case, movant in his 27.26 motion complained of violations of his constitutional rights in the juvenile court § 211.070 hearing which resulted in the dismissal of the juvenile court petition to allow his prosecution under general law, and violation of his constitutional right in the securing of an involuntary confession from him. These matters were found by the trial judge to have been waived by the entry of the guilty plea. *Kunkel v. State*, 501 S.W.2d 52, 54 (Mo.1973).

2. In Georgia, defendants are given by statute the absolute right to withdraw their guilty pleas up to time of sentencing. Ga.Crim.P. Law, § 27–1404. Some judges today follow the enlightened practice of offering the defendant the opportunity to withdraw his guilty plea after he has advised him what sentence will be imposed.

whom he entered his plea or (in accordance with the procedure set forth in *Arbuckle* (citations omitted)) if internal court administrative procedures render that impossible, then in the alternative Ray O. should be permitted to withdraw his admission of burglary.

It is perhaps not too much to say, as the court said in *Arbuckle*, that sentencing by the judge before whom the guilty plea is entered is an implied term[3] of every *plea bargain*, unless the contrary can be shown. Where a defendant enters a plea of guilty before one judge, and another is substituted for sentencing without his consent, the defendant should be permitted upon his request to withdraw his plea of guilty.

In the decision to enter a plea of guilty to a criminal charge where no definite sentence is agreed upon, every lawyer knows that the disposition of the sentencing judge is a subject of consideration. The likelihood of a harsh or lenient sentence is assessed. The personal philosophy of the judge, as evidenced by punishments meted out in other similar cases, or as gathered from his casual remarks and other sources is assayed. Is he (in the case of a youthful offender) sympathetic toward youth? Does he invite the recommendation of the prosecuting attorney with respect to punishment? If so, does he routinely follow the prosecutor's recommendation? Is the offense of a type of which he takes a serious view, or is it of a kind which he treats with less gravity? To what aggravating and mitigating factors does he accord large importance or small? These are questions which any defendant, and any attorney representing a defendant, will closely weigh before he enters, or advises a guilty plea.

Like any term or condition, the privilege of being sentenced by the judge before whom the guilty plea was entered is one which can be waived by the defendant. See *People v. McKinley*, 146 N.W.2d 142 (Mich.

App.1966). In this connection, the trial judge found upon the 27.26 motion that the movant "probably" had not voluntarily consented to the substitution of Judge Marsh, but under his view of the case it made no difference. The record before us contains no indication of any consent to the substitution or of any waiver by defendant. Upon remand of the case, should the state assert that it can affirmatively show that the defendant had consented to Judge Marsh's substitution as sentencing judge or should it assert that defendant had waived that right, then those issues would require an evidentiary hearing after the appointment of an attorney to represent the movant.

*State v. Davis*, 564 S.W.2d 876, and *State v. Tettamble*, 450 S.W.2d 191, are not in point for they do not deal with guilty pleas. They deal with the substitution of judges during the course of criminal proceedings upon not–guilty pleas and jury–tried cases. In *Davis*, the substitution took place during the course of the trial, and the substitution was held to be reversible error. In *Tettamble*, the trial was completed and it was held permissible for a substituted judge to impose sentence where he had the trial transcript before him and was familiar with it.

The majority opinion has not dealt with the issue upon which I would base the decision to reverse and remand. The petitioner's brief in this court, though complaining of the sentencing court's refusal to allow the withdrawal of the guilty plea, does not precisely give as a reason that the sentence was being assessed by a different judge than the one who had received the plea. His brief argues that he should have been given an evidentiary hearing to prove, if he could, that there had been an agreement for a maximum sentence of 30 years before the guilty plea was entered. I do not think we are confined to the simple task of *accepting or rejecting* the reasoning advanced by the

---

**3.** In the present case, it may be argued that Judge Riederer's assessing the sentence was an *express term* of the plea bargain. In the guilty plea hearing, defendant's attorney put this question to him: "Q. Do you understand that when you do enter your plea of guilty, which you have entered, and when it is accepted by the Court, that it is entirely up to this judge, Judge Riederer, as to what sentence you will receive based on what the law tells him he can sentence you to?" "A. Yes."

appellant. Where the death of the first judge and the substitution of the second is so conspicuous a point, and so bound up with the whole question whether the guilty plea should be allowed to be withdrawn, I think we should consider the obvious issue. In ignoring it we take too narrow a view of our appellate function. *Bright v. Sawyer,* 229 Ala. 657, 159 So. 211 (1935); *Hafer v. Schauer,* 429 Pa. 289, 239 A.2d 785 (1968);[4] *Van Leeuwen v. Huffaher,* 5 P.2d 714, 722 (Utah, 1931); 5 C.J.S. Appeal & Error § 1324(1) (1958).

---

4. The *Hafer* court says: "At reargument on this appeal, appellee strenuously urged that the distinction between verdict and judgment, adopted by our Court in its initial opinion, was never raised by Erie at any time during the course of this litigation and hence the issue was not properly before us. In answering appellee's contention that we are indulging in a form of super–advocacy, it is only necessary to note that we are charged here with the responsibility of interpreting a written contract. The mere fact that the interpretation which we deem proper and just had never been raised before should not and does not preclude our Court from arriving at a result consonant with recog- nized principles of law. We have held on many occasions that litigants may not confer subject matter jurisdiction on a court by consent or failure to object. By the same token litigants may not prevent a court from applying relevant principles of law when such principles are germane to a proper resolution of the case at hand. Our conclusion that judgment and verdict have distinctly different meanings is indicative of the fact that the majority of this Court will not blind itself to what a proper application of the law demands." 239 A.2d at 788.