PEOPLE v WHITE

Docket No. 62677. Argued December 3, 1979 (Calendar No. 7).—Decided July 13, 1981.

John L. White, Jr., was charged with delivery of heroin to an undercover narcotics officer who drove him from Oscoda to Detroit and back to buy the heroin. During the preliminary examination in 81st District Court, J. Richard Ernst, J., he denied having "any business dealings" with the officer. White was later charged with perjury in the preliminary examination, and convicted, on his plea of guilty, in Iosco Circuit Court, Allan C. Miller, J., of perjury and attempted delivery of heroin. The Court of Appeals, D. E. Holbrook, Jr., P.J., and D. E. Holbrook and Cynar, JJ., reversed as to the conviction of perjury in a memorandum opinion, holding that the perjured statement concerned an issue of ultimate fact and thus could

REFERENCES FOR POINTS IN HEADNOTES

[1] 60 Am Jur 2d, Perjury § 66.
  81 Am Jur 2d, Witnesses §§ 463, 518, 597, 657.
[2] 60 Am Jur 2d, Perjury §§ 13, 34, 36.
[3] 60 Am Jur 2d, Perjury § 4 *et seq.*
[4, 5] 60 Am Jur 2d, Perjury § 71.
[6] 21 Am Jur 2d, Criminal Law §§ 184, 165 *et seq.,* 473 *et seq.*
[7] 46 Am Jur 2d, Judgments §§ 394, 401, 402, 415.
[8] 60 Am Jur 2d, Perjury § 38.
[9, 10] 21 Am Jur 2d, Criminal Law §§ 487-491.
[11] 46 Am Jur 2d, Judges § 180.
[12-14, 20-22] 21 Am Jur 2d, Criminal Law § 143 *et seq.*
  Availability in state court of defense of entrapment where accused denies committing offenses charged. 5 ALR4th 1128.
[14, 15, 23] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 43.
[16] 21 Am Jur 2d, Criminal Law §§ 313, 315.
  Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.
[17] 5 Am Jur 2d, Appeal and Error §§ 624-627.
  21 Am Jur 2d, Criminal Law § 315.
[18, 19] 21 Am Jur 2d, Criminal Law § 495.

not be the subject of a charge of perjury (Docket Nos. 77-3614, 78-168). The parties appeal.

In an opinion by Justice Kavanagh, joined by Justices Levin, Fitzgerald, and Ryan, the Supreme Court *held:*

Whether or not there is a rule that a charge of perjury cannot be grounded on lies about the ultimate fact in issue, the defendant in this case lied about what were clearly adjudicative facts as well as the ultimate fact of participation in the drug transaction, and his conviction of perjury is reinstated. The defendant was entrapped in the narcotics transaction as a matter of law, and his conviction of attempted delivery of heroin is reversed. The defendant may seek post-conviction relief on the ground of ineffective assistance of counsel.

1. The evils that might result from permitting the prosecutor to retry ultimate facts by charging the defendant with perjury are not present in this case. White elected to testify at the preliminary examination on a charge of delivery of heroin. There was no prior determination that his story was the truthful version, and, there having been no trial, the prosecutor cannot be said to be seeking a more satisfactory result in the drug matter by presenting the same issues in a trial for perjury. The defendant's argument that no perjury charge should be based on perjured statements of the accused even as to adjudicative facts, because the threat of prosecution might coerce defendants into silence and because other evidentiary safeguards at trial are generally sufficient so that the jury would not be misled, is of no force here. White testified falsely at the preliminary examination where the focus is on the prosecution's evidence. The defendant has less interest in testifying at the preliminary examination, and the prosecutor is substantially less likely to be prepared to test his credibility effectively at the preliminary examination than at trial should he unexpectedly testify.

2. A review of the record shows that White lied about what were clearly material adjudicative facts, as well as about the assertedly ultimate fact of participation in the drug transaction. He denied knowing the undercover police officer, denied having "any business dealings" with him, and denied riding with him in an automobile from Oscoda to Detroit and back to make the transaction. The defendant asserts that there is an insufficient factual basis for his plea of guilty of perjury. Even if the defendant is correct in saying that his statement was an admission as to the ultimate fact only, the proper remedy would be to remand the matter to give the prosecutor an opportunity to adduce facts supporting the plea. Since the

evidence on remand would only consist of the transcript of the preliminary examination, the accuracy of which has not been challenged, there is no reason for a *pro forma* remand in this case. The transcript and the defendant's statement at the guilty-plea proceeding that he had falsely denied any participation adequately establishes a factual basis for his plea.

3. The defendant also seeks to have his perjury conviction vacated on the grounds of double jeopardy and collateral estoppel. The constitutional protection against double jeopardy does not ordinarily bar the defendant's prosecution for and conviction of perjury committed at a criminal proceeding against him because the perjury is not the same offense as the substantive one charged in that proceeding. Similarly, the conviction of perjury is not barred by the doctrine of collateral estoppel, for which an issue of ultimate fact must have once been determined by a valid and final judgment in previous litigation between the same parties. The result of the preliminary examination in this case was only to bind the defendant over for trial.

4. The defendant contends that the information for perjury was defective because it failed to give him notice of the specific statements alleged to be false or to assert the materiality of the false statements. The information was sufficient under the Code of Criminal Procedure, which does not require that the specific statements alleged to be false be set forth. If the defendant was uncertain as to the exact statements alleged to be false, his remedy was to have requested a bill of particulars. The addendum to the information specifically stated that the defendant "stated falsely a material fact."

5. The defendant also contends that his plea to the charge of perjury was unknowing and involuntary because he was not informed of the requisite element of intent, and because the court did not name all the witnesses against him. The court complied with the requirement that the court tell the defendant the name of the offense to which he is pleading. The court is not required to explain the elements of the offense. The judge also adequately complied with the requirement that the court inform the defendant that he is giving up the rights he would have at trial to have witnesses against him appear and the right to question witnesses against him.

6. The district judge who conducted the preliminary examination on the charge of perjury was the same judge who had conducted the defendant's preliminary examination on the charge of delivery of heroin. The defendant alleges that it was reversible error for the judge not to have disqualified himself

because of bias. Merely proving that a judge conducted a prior proceeding against the defendant does not amount to proof of bias for purposes of disqualification.

7. The trial judge's finding that the defendant was not entrapped is clearly erroneous. A claim of entrapment is distinct from other defenses such as insanity, self-defense, and lack of specific intent, which involve an assessment of guilt or innocence. A claim of entrapment does not involve an assessment of guilt or innocence, but rather expresses a policy that there should be no prosecution at all. In that respect, it is like a jurisdictional defect which is not waived by a plea of guilty. Michigan has adopted the objective test of entrapment. The question is whether, regardless of the predisposition to crime of the particular defendant involved, the governmental agents have acted in a way that is likely to instigate or create a criminal offense. The trial judge in this case did not properly apply the objective test. While he considered the conduct of the police officers, he also attached undue significance to the propensities of the defendant, finding that the defendant's "only hesitancy was in accumulating enough business to make it worthwhile". The police officer in this case sought out the defendant and asked to purchase narcotics from him. The officer gave the defendant some money, and they agreed to meet several days later. When the defendant did not show up at the meeting place, the officer twice sought him out again. When the defendant said he had not purchased the narcotics because he did not have a ride, the officer offered him one. A week later two undercover police officers drove the defendant from Oscoda to Detroit, gave him money to purchase more narcotics than previously requested, waited while he purchased the narcotics, and drove him back to Oscoda. The defendant was entrapped as a matter of law. The police officers impermissibly manufactured or instigated a crime. That is exactly the governmental activity that is sought to be prevented by the policy against entrapment.

8. White argues that he was denied effective assistance of counsel because his trial lawyer had him testify at the preliminary examination and told him the judge would dismiss the charge if presented with any evidence that White did not commit the offense. White claims he provided the judge with such evidence on his lawyer's instruction to "deviate" from the truth. He further asserts that all lawyers who handle criminal cases know that a defendant should never testify at his own preliminary examination. White's supporting affidavit sufficiently establishes his right to an evidentiary hearing on

whether he was denied the effective assistance of counsel. A claim of ineffective assistance which depends on facts not of record may not, however, be raised for the first time on appeal. Reversed.

Justice Williams, joined by Chief Justice Coleman, concurred with Justice Kavanagh except for the holding on entrapment. He believed there was no entrapment.

Justice Moody, dissenting in part, agreed with Justice Kavanagh as to the reinstatement of the conviction of perjury. He also agreed with the conclusion that the defendant has not waived his defense of entrapment by pleading guilty but he wrote separately on that issue. He dissented as to the conclusion that the defendant was entrapped as a matter of law, and would affirm the defendant's conviction of attempted delivery of heroin.

1. The general rule is that a plea of guilty waives all non-jurisdictional defects in the proceedings. However, those rights which might provide a complete defense to a criminal prosecution, and those which undercut the state's interest in punishing the defendant or the state's authority or ability to proceed with the trial, may never be waived by a plea of guilty. Where it is found that the result of the right asserted is similar to that of the jurisdictional defenses in that, if proven, the right asserted would prevent the trial from taking place, a plea of guilty does not waive the right. The defense of entrapment fits within the category of protected rights because, if successfully raised, it provides a complete defense to a criminal prosecution and undercuts the state's interest in punishing the defendant and authority or ability to proceed with the trial.

2. The spirit of the cases decided by the Supreme Court of the United States, respect for the state's interest in the finality of conviction and the judicial economy of the guilty-plea procedure, would not allow a defendant to preserve a wide variety of defenses in spite of his plea of guilty. Underlying the rationale of the plea of guilty in many cases is the bargain and exchange; the defendant gives up important rights and in exchange he may be convicted of a lesser crime or receive a shorter sentence. Courts should be hesitant to allow a defendant to upset a bargain by which he knowingly and intelligently admitted his guilt. Therefore, only those rights and defenses which reach beyond the factual determination of the defendant's guilt and implicate the very authority of the state to bring a defendant to trial are preserved. Such rights may never be waived.

3. Those rights of the defendant which are subsumed in a plea of guilty necessarily relate to all the rights and challenges

associated with the conduct of trial. Thus, important safeguards relating to the capacity of the state to prove the defendant's factual guilt and those regulating the prosecution's conduct at trial are among the ones the defendant waives when he pleads guilty. The rights which essentially relate to the gathering and presentation of evidence are lost even if a successful challenge would prevent the continuation of the prosecution. For example, the right to challenge the legality of a search which produced the evidence against the defendant would not survive a plea of guilty.

4. The defense of entrapment, in essence, claims entitlement to the benefit of a judicial policy that, even if culpable, the defendant should be insulated from prosecution because of the impropriety of the government's conduct. In Michigan, the objective test of entrapment focuses on the illegal use of the power of government to gain convictions, and on whether the actions of the police were so reprehensible under the circumstances that the defendant should not have been brought to trial in the first place. The defendant should be able, in spite of his plea of guilty, to preserve a claim that without governmental involvement the crime would not have taken place.

5. Where the conduct of the police is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it entrapment has occurred. The trial judge in this case did not properly apply the test because he appeared to place undue emphasis upon the defendant's propensity to commit the crime. However, the defendant bears the burden of proving entrapment. In this case, the police officer testified that before arrangements were made for the ride to Detroit to buy narcotics, he gave the defendant an opportunity to cancel the proposed drug transaction and return the money advanced, but White refused, stating that he would still like to obtain the heroin for the officer. The actions of the police officer in attempting several times to arrange the heroin sale and in providing the necessary transportation were not so reprehensible under the circumstances as to amount to entrapment as a matter of law.

Justice Ryan wrote that, while he concurred fully with Justice Kavanagh's opinion, he also concurred with parts I and II of Justice Moody's opinion, summarized in paragraphs 1 through 4 immediately preceding.

OPINION OF THE COURT

1. PERJURY — WITNESSES — CREDIBILITY.

Nothing should impede legitimate efforts to punish perjury; how-

ever, the trial is the primary safeguard against inaccurate testimony, through cross-examination, rebuttal, and impeachment (MCL 705.422; MSA 28.664).

2. Perjury — Defendant Testifying — Preliminary Examination.

The evils that might result from permitting the prosecutor to retry ultimate facts by charging a defendant with perjury are not present where an accused elected to testify at the preliminary examination on a charge of delivery of heroin and falsely testified that he had not participated in the transaction; there was no prior determination that the accused's story was the truthful version, and, there having been no trial, the prosecutor cannot be said to be seeking a more satisfactory result in the drug matter by presenting the same issues in a trial for perjury (MCL 750.422; MSA 28.664).

3. Perjury — Defendant Testifying — Adjudicative Facts.

A defendant charged with delivery of heroin lied about what were clearly material adjudicative facts, lies which will support a charge and conviction of perjury, as well as about the assertedly ultimate fact of participation in the drug transaction, where he falsely denied knowing the undercover police officer who was the complaining witness, denied having "any business dealings" with the officer, and denied riding with him in an automobile from Oscoda to Detroit and back to make the transaction (MCL 750.422; MSA 28.664).

4. Perjury — Plea of Guilty — Factual Basis.

The proper remedy for a defendant convicted, on his plea of guilty, of perjury on the inadequate factual basis that he falsely denied only an ultimate fact would be a remand to the trial court to give the prosecutor an opportunity to adduce facts supporting the plea; however, there is no reason for a *pro forma* remand where the evidence would only consist of the transcript of the defendant's false testimony, and the accuracy of the transcript is not questioned (MCL 750.422; MSA 28.664).

5. Perjury — Plea of Guilty — Factual Basis.

The transcript of the defendant's false testimony in a preliminary examination on a charge of delivery of heroin and the defendant's statement at a guilty-plea proceeding that he had falsely denied any participation in the heroin transaction adequately establishes a factual basis for his plea of guilty of perjury where the defendant, in the same plea-taking proceeding, admitted he participated and pled guilty of attempted delivery of heroin (MCL 750.422; MSA 28.664).

6. PERJURY — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — DEFEN-
   DANT TESTIFYING.

   The constitutional protection against double jeopardy does not
   ordinarily bar the defendant's prosecution for and conviction of
   perjury committed at a criminal proceeding against him be-
   cause the perjury is not the same offense as the substantive
   offense charged at the proceeding (US Const, Am V; Const 1963,
   art 1, § 15; MCL 750.422; MSA 28.664).

7. PERJURY — COLLATERAL ESTOPPEL — DEFENDANT TESTIFYING —
   PRELIMINARY EXAMINATION.

   A defendant's prosecution for and conviction of perjury commit-
   ted at preliminary examination on another charge against him
   is not barred by the doctrine of collateral estoppel where the
   defendant was bound over for trial on the other charge; in
   order to apply collateral estoppel, an issue of ultimate fact
   must have once been determined by a valid and final judgment
   in previous litigation between the same parties (MCL 750.422;
   MSA 28.664).

8. INDICTMENT AND INFORMATION — PERJURY — SUFFICIENCY — NO-
   TICE.

   An information for perjury is not defective because it fails to give
   notice of the specific statements alleged to be false where it
   specifically charges that the defendant "stated falsely a mate-
   rial fact" at a preliminary examination on another charge; if
   the defendant is uncertain as to the exact statements alleged to
   be false, his remedy is to request a bill of particulars (MCL
   750.422, 767.44, 767.73; MSA 28.664, 28.984, 28.1013).

9. CRIMINAL LAW — PLEA OF GUILTY — PERJURY — NATURE OF
   CHARGE — ELEMENTS OF OFFENSE.

   A trial court is not required to explain the elements of the offense
   in accepting a plea of guilty of the offense; therefore, a plea of
   guilty of perjury is not unknowing and involuntary on the
   ground that the defendant was not informed by the trial court
   of the requisite element of intent (GCR 1963, 785.7).

10. CRIMINAL LAW — PLEA OF GUILTY — ADVICE OF RIGHTS — TRIAL
    — WITNESSES.

    Failure of a judge conducting a plea-taking proceeding on a
    charge of perjury to advise the defendant that the witnesses
    who were present during alleged perjured testimony given by
    the defendant in another criminal matter included the judge,
    prosecuting attorney, and defense attorney is not erroneous
    where the plea-taking judge adequately complied with the
    requirement that he inform the defendant that he is giving up

the rights he would have at trial to have witnesses against him appear and the right to question witnesses against him (GCR 1963, 785.7).

11. JUDGES — DISQUALIFICATION — BIAS.

Merely proving that the district judge who conducted a preliminary examination on a charge of perjury was the same judge who conducted the prior proceeding against the defendant at which the perjured testimony was given does not amount to proof of bias for purposes of disqualification of the examining judge (GCR 1963, 912.2).

12. CRIMINAL LAW — PLEA OF GUILTY — ENTRAPMENT.

A claim of entrapment does not involve an assessment of guilt or innocence, but rather expresses a policy that there should be no prosecution at all; in that respect, it is like a jurisdictional defect which is not waived by a plea of guilty.

13. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST.

The defense of entrapment, in Michigan, is based on the belief that the method employed by the government to bring about conviction cannot be countenanced; the question is whether, regardless of the predisposition to crime of the particular defendant involved, the governmental agents have acted in a way that is likely to instigate or create a criminal offense.

14. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST — CONTROLLED SUBSTANCES — DELIVERY OF HEROIN.

A trial judge did not properly apply the objective test of entrapment in accepting a plea of guilty of attempted delivery of heroin where, although the judge considered the conduct of the police officers in the case, he attached undue significance to the propensities of the defendant to commit the crime, finding that the defendant's "only hesitancy was in accumulating enough business to make it worthwhile" (MCL 333.7401; MSA 14.15[7401]).

15. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST — CONTROLLED SUBSTANCES — DELIVERY OF HEROIN.

A defendant charged with delivery of heroin was entrapped as a matter of law where an undercover police officer sought out the defendant and asked to purchase narcotics, gave the defendant some money and agreed to meet him several days later, twice again sought out the defendant after he failed to meet the officer as agreed, offered and provided the defendant transportation by automobile from Oscoda to Detroit to make the

transaction, gave him money to purchase more narcotics than previously requested, waited while the defendant purchased the heroin, and drove him back to Oscoda (MCL 333.7401; MSA 14.15[7401]).

16. CRIMINAL LAW — ASSISTANCE OF COUNSEL — EVIDENTIARY HEARING.

A defendant sufficiently establishes his right to a post-conviction evidentiary hearing on whether he was denied the effective assistance of counsel where he claims that his lawyer had him testify at the preliminary examination and told him the judge would dismiss the charge if presented with any evidence that the defendant did not commit the offense, that he provided the judge with such evidence on his lawyer's instruction to "deviate" from the truth, and that all lawyers who handle criminal cases know that a defendant should never testify at his own preliminary examination.

17. CRIMINAL LAW — ASSISTANCE OF COUNSEL — PRESERVING QUESTION.

A claim of ineffective assistance of counsel which depends on facts not of record may not be raised for the first time on appeal.

OPINION CONCURRING IN PART AND DISSENTING IN PART BY BLAIR MOODY, JR., J.

See headnotes 1-11, 13, 14.

18. CRIMINAL LAW — PLEA OF GUILTY — DEFENSES — PRESERVING QUESTION.

*The general rule is that a plea of guilty waives all non-jurisdictional defects in the proceedings; however, those rights which might provide a complete defense to a criminal prosecution, and those which undercut the state's interest in punishing the defendant or the state's authority or ability to proceed with the trial, may never be waived by a plea of guilty.*

19. CRIMINAL LAW — PLEA OF GUILTY — DEFENSES — PRESERVING QUESTION.

*Rights which are not subsumed by a plea of guilty include strictly jurisdictional defenses and those defenses which, if proven, would prevent the trial from taking place; only those rights and defenses which reach beyond the factual determination of the defendant's guilt and implicate the very authority of the state to bring a defendant to trial are preserved.*

20. CRIMINAL LAW — ENTRAPMENT.

The defense of entrapment, if successfully raised, provides a complete defense to a criminal prosecution by claiming the benefit of a judicial policy that, even if culpable, the defendant should be insulated from prosecution because of the impropriety of the government's conduct.

21. CRIMINAL LAW — PLEA OF GUILTY — DEFENSES — ENTRAPMENT.

A defendant does not waive his claim of the defense of entrapment by a plea of guilty of the substantive offense because that defense assumes that without improper involvement by the police the crime would not have taken place.

22. CRIMINAL LAW — ENTRAPMENT — BURDEN OF PROOF.

The defendant bears the burden of proving a defense of entrapment.

23. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST — CONTROLLED SUBSTANCES — DELIVERY OF HEROIN.

A defendant charged with delivery of heroin was not entrapped as a matter of law where an undercover police officer, who sought him out to buy narcotics several times and provided the transportation to make the sale, gave the defendant an opportunity to cancel the proposed drug transaction and return the money advanced, and the defendant refused, stating that he would still like to obtain the heroin for the officer (MCL 333.7401; MSA 14.15[7401]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stephen H. Naegle,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

State Appellate Defender (by *Derrick A. Carter*) for defendant.

KAVANAGH, J. John L. White, Jr., was convicted on his plea of guilty of the offenses of attempted delivery of heroin and of perjury. MCL 335.341(1)(a); MSA 18.1070(41)(1)(a); MCL 750.92; MSA 28.287; MCL 750.422; MSA 28.664.

On appeal, the Court of Appeals in an unpublished opinion affirmed the defendant's conviction

of attempted delivery of heroin and reversed his perjury conviction, relying on *People v Longuemire,* 87 Mich App 395; 275 NW2d 12 (1978). The people assert that the Court of Appeals erred in setting aside the defendant's conviction of perjury. On cross-appeal, the defendant asserts that the Court of Appeals erred in affirming his conviction of attempted delivery of heroin.

We reverse the decision of the Court of Appeals and reinstate the conviction of perjury. We reverse the conviction of attempted delivery of heroin.

## A

White was an airman stationed at Wurtsmith Air Force Base near Oscoda, nearly 200 miles north of Detroit. Curtis Chambers, an undercover narcotics officer, testified at preliminary examination that he approached White on January 5, 1977, and asked to purchase narcotics from him. White stated that it wasn't very profitable for him to make the trip downstate to make a single purchase but "possibly in a couple of days" he would have received other requests for narcotics and would be able to make the trip. Chambers gave White $70 to purchase narcotics for him and arranged to meet White three days later.

When White missed the rendezvous, Chambers sought him out. White said he had not yet made the trip but might go down the following week.

On January 16, 1977, Chambers again contacted White, who said that he had not yet purchased the narcotics because he did not have a ride. Chambers offered to drive White down, and the two agreed to make the trip on January 19.

On January 19, Chambers and another undercover officer drove White from Oscoda to Detroit,

gave him an additional $130 to purchase narcotics, waited outside an apartment building while he made the purchase, and drove him back to Oscoda, where he transferred the narcotics to them. The officers dropped White off at his residence, contacted their backup crew, and returned to arrest White a few minutes later.

White was charged with delivery of heroin. After Chambers and another officer testified at his preliminary examination, he took the stand. On direct examination he admitted knowing Chambers by an alias but denied having "any business dealings" with him on the relevant dates or riding with him from Oscoda to Detroit and back. On cross-examination he expressly denied taking money from Chambers or delivering heroin to him.

White was subsequently charged with committing perjury at his preliminary examination and ultimately entered guilty pleas to the perjury charge and a reduced charge of attempted delivery of heroin. At the plea proceeding, after White recounted the events leading to the delivery of heroin charge, the following colloquy ensued:

"*The Court:* [N]ow, with reference to false swearing, as I understand it, you made two different versions of the—of this incident?

"*The Defendant:* No, sir, only one. My statement was made falsely.

"*The Court:* I see, and what was that?

"*The Defendant:* Denial of any participation in the drug transactions."

We granted leave in this case to speak to the following issues:

(A) Whether a defendant who allegedly lies about the ultimate fact at issue during proceedings

on the criminal charge against him may subsequently be prosecuted for and convicted of perjury.

(B) Whether the trial court failed to elicit a sufficient factual basis for the defendant's perjury plea.

Whenever a charge of perjury arises out of a defendant's testimony during his prosecution for another crime, we should be alert to all the dangers which may be involved in the charge.

On the one hand we should be mindful of the menace to our trial system which a perjurious witness imports. It is difficult to imagine a more potent threat to the adjudicative process than perjury. Nothing should impede legitimate efforts to punish it.

On the other hand, the trial process itself is the primary safeguard against inaccurate testimony. Cross-examination, rebuttal and impeachment are elements of the trial process intended to expose untruthful testimony. It is the function of the trier of fact to assess credibility as well as to determine the facts.

An overzealous prosecutor might bring a subsequent charge of perjury simply to ask a second jury or judge to determine fact and credibility issues already decided in the defendant's favor by the first fact finder or in an attempt to ask a second judge to augment a sentence the prosecutor found disappointing. The very chance of a spiteful perjury prosecution might dissuade a truthful but timid defendant from testifying at all.

In this case, however, no such evils are present. White elected, atypically, to testify at his preliminary examination on a drug charge. There was no prior determination that White's story was the truthful version and, there having been no trial, the prosecutor cannot be said to be seeking a more

satisfactory result by presenting the same issues to a second jury or judge.

With this in mind we consider the errors asserted.

## B

The Court of Appeals, in *People v Longuemire, supra,* p 398, held that adjudicative facts can form the basis for a perjury charge, but ultimate facts cannot, and provided a definition for distinguishing the two.[1] In the instant case, the Court of Appeals applied the rule of *Longuemire* and reversed the defendant's conviction of perjury, concluding that the defendant lied about ultimate facts.

When we granted leave to appeal, we directed the parties to brief the issues as stated above. This was unfortunate, for as the people properly point out, the error assertedly made by the Court of Appeals did not implicate the correctness of the *Longuemire* rationale, but rather its application.

We need not here decide whether *Longuemire* is correct in its holding that ultimate facts cannot form the basis of a perjury charge or in its standard for distinguishing ultimate from adjudicative facts. A review of the record shows White lied about what were clearly adjudicative facts as well as about the assertedly ultimate fact of participation in the drug transaction. He denied knowing

---

[1] *People v Longuemire,* 87 Mich App 395; 275 NW2d 12 (1978), defined ultimate facts as those concerning "the legal definitions and effects ascribed to the basic facts or combination of basic facts as found". "Ultimate facts encompass statements as to noncommission of the crime charged or a legal element of the crime." Examples given were "I didn't bribe Mr. X" or "I didn't break into that house".

Adjudicative facts were defined as facts pertaining to "who did what, where, when, how and with what motive or intent". The examples given were "I didn't give Mr. X $50,000" or "I didn't force the door open".

Officer Chambers, denied having any business dealings with him, and denied riding in an automobile with him from Oscoda to Detroit and back. These are material adjudicative facts, lies as to which will support a perjury charge and conviction.

White argues that no perjury charge should be based on an accused's perjurious statements even as to adjudicative facts. This is not because a defendant has a right to testify untruthfully but because the threat of liberal perjury prosecutions and potential prosecutorial abuse might coerce accuseds into silence, and other safeguards, such as cross-examination, impeachment and rebuttal, are generally sufficient to insure that a defendant does not mislead the jury with his testimony. *Bronston v United States,* 409 US 352; 93 S Ct 595; 34 L Ed 2d 568 (1973).

Whatever merit this argument might have when applied to the facts of a different case, it is of no force here because White testified falsely not at trial but rather at a preliminary examination where the focus is on the prosecution's evidence. The defendant has less interest in testifying at the preliminary examination and the prosecutor is substantially less likely to be prepared to effectively test the accused's credibility at the preliminary examination than at trial should the accused unexpectedly testify.

## C

In *Guilty Plea Cases,* 395 Mich 96, 128-132; 235 NW2d 132 (1975), and *People v Haack,* 396 Mich 367, 376-377; 240 NW2d 704 (1976), our Court considered the question of factual bases for guilty pleas. We said that "on appellate review the standard to be applied in determining the adequacy of

the factual basis is whether the trier of fact could properly convict on the facts as stated by the defendant".

The defendant asserts that the only factual basis elicited by the court during his guilty plea to perjury was that he had falsely denied any participation in drug transactions. The defendant contends that, because this testimony concerned an ultimate fact, there were no facts upon which the trier of fact could properly convict.

The defendant pled guilty of attempted delivery of heroin and perjury in the same proceeding. The defendant first testified that he took money from Officer Chambers, rode to Detroit with Officers Chambers and McCarty, picked up heroin from a heroin dealer in Detroit, and gave the heroin to the officers when they returned to Oscoda. The defendant then stated that his prior statement, denying any participation in the drug transactions, was made falsely.

Even if the defendant is correct that his statement that he had falsely "deni[ed] * * * any participation in the drug transactions" was an admission as to an ultimate fact only, the proper remedy under *Guilty Plea Cases, supra,* p 129, would be a remand to give the prosecutor an opportunity to adduce facts supporting the plea. Since the perjury occurred at the preliminary examination on the delivery of heroin charge, this evidence would consist entirely of the transcript of that preliminary examination, which is part of the record on appeal. The defendant has not challenged the accuracy of the transcript. We see no reason for a *pro forma* remand so that the prosecutor can summon a stenographer to certify the accuracy of a transcript the verity of which has been so con-

ceded.[2] The transcript, taken together with the defendant's conclusory statement at the time his guilty plea to the perjury charge was offered that he had falsely "deni[ed] * * * any participation in the drug transactions", adequately establishes a factual basis for his plea.

# D

The defendant raises many other issues, several of which merit only brief discussion. He seeks to have his perjury conviction vacated on the grounds of double jeopardy and collateral estoppel.[3] The perjury charge was based on statements made by the defendant during his preliminary examination for the offense of delivery of heroin.

Double jeopardy bars reprosecution for the same offense. US Const, Am V; Const 1963, art 1, § 15. Perjury committed at a judicial proceeding is not the same offense as the substantive offense charged in that proceeding. *United States v Williams,* 341 US 58, 61; 71 S Ct 595; 95 L Ed 747 (1951); see, also, *People v Albers,* 137 Mich 678, 681-684; 100 NW 908 (1904). Therefore, the constitutional protection against double jeopardy does not ordinarily bar the defendant's prosecution for and conviction of perjury.

Similarly, the defendant's prosecution for and conviction of perjury is not barred by the doctrine of collateral estoppel. In order to apply collateral estoppel, an issue of ultimate fact must have once been determined by a valid and final judgment in

---

[2] We do not wish to be understood as authorizing the use of preliminary examination transcripts by a reviewing court to establish a factual basis for a guilty plea where the crime did not consist solely of the testimony at the preliminary examination.

[3] The defendant's guilty plea did not waive his right to assert a double jeopardy defense. *People v Alvin Johnson,* 396 Mich 424; 240 NW 729 (1976).

a previous litigation between the same parties. *Ashe v Swenson,* 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970).

The purpose of a preliminary examination is to determine whether a felony was committed and whether probable cause exists to believe that the defendant committed it. We need not decide whether a finding respecting the defendant's credibility rendered at a preliminary examination could ever be accorded collateral estoppel effect, for in the instant case the defendant was bound over for trial.

The defendant contends that the information for perjury was defective because it failed to give him notice of the specific statements alleged to be false or to assert the materiality of the false statements. The information was sufficient under MCL 767.73; MSA 28.1013,[4] which does not require that the specific statements alleged to be false be set forth. If the defendant was uncertain as to the exact statements alleged to be false, his remedy was to have requested a bill of particulars under MCL 767.44; MSA 28.984.

The information and addendum comply with the materiality requirements of *People v Cash.*[5] The addendum specifically stated that the defendant "stated falsely a material fact".

---

[4] "An indictment for perjury or for subornation of, solicitation, or conspiracy to commit perjury, is sufficient which indicates the offense for which the accused is prosecuted, the nature of the controversy in respect of which the offense was committed and before what court or officer the oath was taken or was to have been taken, without setting forth any part of the records or proceedings with which the oath was connected, and without stating the commission or authority of the court or other authority before whom the perjury was committed or was to have been committed or the form of the oath or affirmation or the manner of administering the same." MCL 767.73; MSA 28.1013.

[5] *People v Cash,* 388 Mich 153, 159; 200 NW2d 83 (1972), restates the rule in Michigan that "materiality of the false swearing to the matter in question must be alleged or it must clearly appear so from the statements alleged to be false".

Citing *Bronston v United States, supra,* as authority, the defendant argues that because his statements were literally correct, they did not constitute perjury. At the defendant's first preliminary examination the following colloquy occurred:

"*Q.* Are you acquainted with a Curtis Chambers who you saw testify on the stand just a few minutes before this?

"*A.* No, sir, I know him by an alias.

"*Q.* What is his alias?

"*A.* His alias was Ken.

"*Q.* Did you have any business dealings with Mr. Chambers on or about January 5, 1977?

"*A.* No, sir.

"*Q.* Did you have any business dealings with him on or about the 16th of January, 1977?

"*A.* No, sir.

"*Q.* Or the 19th of January, 1977?

"*A.* No, sir.

"*Q.* He has testified you rode with him in an automobile from the Oscoda area to Detroit and back to Oscoda?

"*A.* No, sir."

The defendant's theory is that his denial of associating with Curtis Chambers was literally correct because he did not associate with Officer Chambers in his capacity as a police officer; he knew him only by an alias. This argument has no merit. The defendant denied having any business dealings with the witness after admitting he knew him by an alias. The officer's contrary testimony could support a verdict of perjury.

The defendant contends that his guilty plea to perjury was unknowing and involuntary because he was not informed of the requisite element of intent. The court complied with GCR 1963, 785.7(1)(a) which requires that the court tell the

defendant the name of the offense to which he is
pleading. The court is not required to explain the
elements of the offense. See *Guilty Plea Cases,
supra,* p 116.

At the plea taking, the judge informed the de-
fendant that he had a right to confront witnesses
against him. The judge read a list of specifically
named witnesses against him. The defendant al-
leges error because the judge did not include the
names of the judge, prosecuting attorney and de-
fense attorney who were present during the al-
leged perjurious testimony.

The plea-taking judge adequately complied with
GCR 1963, 785.7(1)(g), subds (v) and (vi), which
requires that the court inform the defendant that
he is giving up the rights he would have at trial to
have witnesses against him appear and the right
to question witnesses against him. See *Guilty Plea
Cases, supra,* pp 119-125.

The district judge who conducted the prelimi-
nary examination on the charge of perjury was the
same judge who conducted the defendant's prelimi-
nary examination on the charge of delivery of
heroin. The defendant alleges that it was revers-
ible error for the judge not to have disqualified
himself because of bias. Merely proving that a
judge conducted a prior proceeding against the
same defendant does not amount to proof of bias
for purposes of disqualification under GCR 1963,
912.2.

E

The defendant asserts that his conviction of
attempted delivery of heroin should be vacated
because of entrapment. The people assert that the
defendant has waived this defense by his plea of
guilty. We disagree.

We put the claim of entrapment in proper perspective in *People v D'Angelo,* 401 Mich 167, 179; 257 NW2d 655 (1977), when we said:

"When an accused claims entrapment he is asserting, in essence, entitlement to the benefit of a judicial policy that his claim, if true, is a bar to the prosecution of the case. His claim does not involve an assessment of guilt or innocence and, in fact, is irrelevant to it."

A claim of entrapment is distinct from other defenses such as insanity, self-defense, and lack of specific intent, which involve an assessment of guilt or innocence. *Id.* A claim of entrapment does not involve an assessment of guilt or innocence, but rather expresses a policy that there should be no prosecution at all. In this respect, it is like a jurisdictional defect which is not waived by a plea of guilty. See *People v Alvin Johnson,* 396 Mich 424, 439-445; 240 NW2d 729 (1976).

Turning to the merits of the asserted claim, we hold that the trial judge's finding that the defendant was not entrapped is clearly erroneous.

Michigan has been at the forefront in protecting persons from being convicted of a crime which was instigated, induced or manufactured by a government agent. Over a hundred years ago, Justices MARSTON and CAMPBELL deplored such governmental action. Justice MARSTON forcefully wrote:

"The course pursued by the officers in this case was utterly indefensible. Where a person contemplating the commission of an offense approaches an officer of the law, and asks his assistance, it would seem to be the duty of the latter, according to the plainest principles of duty and justice, to decline to render such assistance and to take such steps as would be likely to prevent the

commission of the offense, and tend to the elevation and improvement of the would-be criminal, rather than to his farther debasement." *Saunders v People,* 38 Mich 218, 221-222 (1878).

Justice CAMPBELL concurred:

"[T]he encouragement of criminals to induce them to commit crimes in order to get up a prosecution against them, is scandalous and reprehensible." *Id.,* 223.

More recently, we renounced the subjective view of entrapment espoused by the United States Supreme Court and adopted the objective test defined in Mr. Justice Stewart's dissent in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973), Mr. Justice Frankfurter's concurring opinion in *Sherman v United States,* 356 US 369; 78 S Ct 819; 2 L Ed 2d 848 (1958), and the concurring opinion of Mr. Justice Roberts in *Sorrells v United States,* 287 US 435; 53 S Ct 210; 77 L Ed 413 (1932). *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973); *People v D'Angelo, supra,* p 172.

Justice Stewart's dissenting opinion in *Russell, supra,* pp 440-441, succinctly distinguishes the subjective test from the objective test as follows:

"In *Sorrells v United States, supra,* and *Sherman v United States, supra,* the Court took what might be called a 'subjective' approach to the defense of entrapment. In that view, the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, 'otherwise innocent,' who have been lured to the commission of the prohibited act through the Government's instigation. *Sorrells v United States, supra,* at 448. The key phrase in this formulation is 'otherwise innocent,' for the entrapment defense is available under this approach only to those who would not have com-

mitted the crime but for the Government's inducements. Thus, the subjective approach focuses on the conduct and propensities of the particular defendant in each individual case: if he is 'otherwise innocent,' he may avail himself of the defense; but if he had the 'predisposition' to commit the crime, or if the 'criminal design' originated with him, then—regardless of the nature and extent of the Government's participation—there has been no entrapment. *Id.,* at 451. And, in the absence of a conclusive showing one way or the other, the question of the defendant's 'predisposition' to the crime is a question of fact for the jury. The Court today adheres to this approach.

"The concurring opinion of Mr. Justice Roberts, joined by Justices Brandeis and Stone, in the *Sorrells* case, and that of Mr. Justice Frankfurter, joined by Justices Douglas, Harlan and Brennan, in the *Sherman* case, took a different view of the entrapment defense. In their concept, the defense is not grounded on some unexpressed intent of Congress to exclude from punishment under its statutes those otherwise innocent persons tempted into crime by the Government, but rather on the belief that 'the methods employed on behalf of the Government to bring about conviction cannot be countenanced.' *Sherman v United States, supra,* at 380. Thus, the focus of this approach is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power.' *Id.,* at 382. Phrased another way, the question is whether—regardless of the predisposition to crime of the particular defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense."

The trial judge in the instant case did not properly apply the objective test of entrapment. While he considered the conduct of the police officers, he also attached undue significance to the propensities of the defendant: "They did not need to encourage him. His only hesitancy was in accumulat-

ing enough business to make it worthwhile." This was error, for in the words of Mr. Justice Roberts:

"The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy." *Sorrells, supra,* p 459.

The police officer in the instant case sought out the defendant and asked to purchase narcotics from him. The officer gave the defendant some money, and they agreed to meet several days later. When the defendant did not show up at the meeting place, the officer again sought him out, not once but twice. When the defendant said he had not purchased the narcotics because he did not have a ride, the officer offered him transportation. A week later two undercover police officers drove the defendant from Oscoda to Detroit, gave him money to purchase more narcotics than previously requested, waited while he purchased the narcotics, and drove him back to Oscoda. After arriving in Oscoda and transferring the narcotics to the police officers, the defendant was arrested.

We hold that the defendant was entrapped as a matter of law. The police officers impermissibly manufactured or instigated a crime. This is exactly the governmental activity that is sought to be prevented by the policy against entrapment.

## F

White argues that he was denied effective assistance of counsel because his trial lawyer had him testify at his preliminary examination and told

him the judge would dismiss the charge if presented with any evidence that White did not commit the offense. White claims he provided the judge with such evidence on his lawyer's instruction to "deviate" from the truth. He further asserts that all lawyers who handle criminal cases know that a defendant should never testify at his own preliminary examination because if the prosecutor's evidence is sufficient to establish probable cause it is unlikely that the charge will be dismissed based on the defendant's testimony. White's supporting affidavit sufficiently establishes his right to an evidentiary hearing on whether he was denied the effective assistance of counsel. A claim of ineffective assistance which depends on facts not of record may not, however, be raised for the first time on appeal. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

We reverse the defendant's conviction of attempted delivery of heroin. We reverse the decision of the Court of Appeals and reinstate the defendant's conviction of perjury without prejudice to his filing a motion seeking post-conviction relief on the ground of ineffective assistance of counsel.

LEVIN, FITZGERALD, and RYAN, JJ., concurred with KAVANAGH, J.

WILLIAMS, J. *(concurring except for Part E).* My brother KAVANAGH has written an exemplary opinion with which I wholly concur except for Part E. With my brother MOODY and the trial judge, I believe there was no entrapment.

COLEMAN, C.J., concurred with WILLIAMS, J.

BLAIR MOODY, JR., J. *(concurring in part and dissenting in part).* I concur with parts A through

D of Justice KAVANAGH's opinion reinstating defendant's perjury conviction. I also agree with his holding that, with reference to *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976), *cert den* 429 US 951 (1976), defendant has not waived his entrapment defense by pleading guilty. In view of the jurisprudential significance of this question, I write separately to record my analysis of this issue.

Furthermore, I cannot agree that under the facts of this case, defendant was entrapped as a matter of law. Therefore, I would affirm the judgment of the Court of Appeals insofar as it affirmed defendant's conviction of attempted delivery of heroin.

I

The general rule in Michigan is that a plea of guilty waives all non-jurisdictional defects in the proceedings. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

However, in *People v Alvin Johnson,* our most recent detailed discussion of the issue, this Court limited the broad scope of this plea-waiver rule. Holding that pleading guilty did not foreclose defendant from raising a double jeopardy defense, we delineated a more specific test to distinguish between those rights which are waived by the entry of a guilty plea and those which a defendant may assert in spite of an admission of factual guilt:

"Certainly it is true that those rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant, or the state's authority or ability to proceed with the trial may never be waived by guilty

plea. These rights are *similar to the jurisdictional defenses* in that their effect is that there should have been no trial at all. The test, although grounded in the constitution, is therefore a practical one. * * * Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right." (Emphasis added.) (Footnotes omitted.) *Alvin Johnson,* 444.

Thus, the list of rights which are not subsumed by a guilty plea encompasses not only strictly jurisdictional defenses, but also those that *resemble* jurisdictional defenses in that, if proven, they would bar the prosecution from bringing defendants to trial in the first place.

The entrapment defense fits logically within the category of protected rights as specified by the language of the *Alvin Johnson* test. If successfully raised, entrapment provides "a complete defense to a criminal prosecution" and undercuts "the state's interest in punishing the defendant" and "authority or ability to proceed with the trial".[1] More importantly, holding that the entrapment claim does not merge into the guilty plea is consistent with not only the underlying rationale of *Alvin Johnson,* but also the exceptions to the plea-waiver doctrine recognized by the United States Supreme Court which provide the foundation for that rationale.

---

[1] Entrapment arguably also is one of those defenses "grounded in the due process clause" that is protected under the *Alvin Johnson* test. While the entrapment defense is not specifically mentioned in the state or federal constitution, it can be said to be "grounded in the due process clause" in that it is " 'indistinguishable from other law enforcement practices which the courts have held to violate due process. Entrapment is an affront to the basic concepts of justice. Where it exists, law enforcement techniques become contrary to the established law of the land as an impairment to due process' ". *People v Turner,* 390 Mich 7, 19; 210 NW2d 336 (1973), quoting *United States v Chisum,* 312 F Supp 1307, 1312 (CD Cal, 1970).

A guilty plea conclusively resolves the question of a defendant's factual guilt. It relieves the state of the burden of producing sufficient evidence to prove defendant's criminal activity beyond a reasonable doubt. See Shwartz, Note: *The Guilty Plea as a Waiver of "Present but Unknowable" Constitutional Rights: The Aftermath of the Brady Trilogy,* 74 Colum L Rev 1435 (1974).

In a series of cases, including the guilty-plea trilogy of *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), *McMann v Richardson,* 397 US 759; 90 S Ct 1441; 25 L Ed 2d 763 (1970), and *Parker v North Carolina,* 397 US 790; 90 S Ct 1458; 25 L Ed 2d 785 (1970), and later *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973), the Supreme Court recognized that a guilty plea has an additional effect: once a defendant admits guilt, he is precluded from challenging any constitutional violations that may have occurred before the plea was entered.[2] As the Court said in *Tollett:*

"We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

---

[2] In *Brady* and *Parker* defendants pled guilty to avoid the possibility of a death sentence that could, according to statute, only be imposed after a jury trial. Though the Supreme Court had subsequently declared such statutory schemes unconstitutional, it held that Brady's and Parker's right to challenge their convictions on this basis had been waived by their guilty plea. In *McMann,* the Court held that the defendant had similarly waived his right to challenge a procedure whereby the same jury that determined the voluntariness of his confession also decided his guilt. In *Tollett,* defendant alleged that the indictment against him had been returned by a grand jury from which blacks had been unconstitutionally excluded. Again, the Supreme Court held that his right to question such a defect in the proceedings against him had been waived by his guilty plea.

raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea * * *." 411 US 267.

However, even in the face of this broad statement, the Supreme Court has not construed the rule to constitute an absolute bar to the assertion of all claims. Depending on the nature of the right, the Court will look beyond "the voluntary and intelligent character of the guilty plea" to examine the underlying substantive violation.

In *Blackledge v Perry,* 417 US 21, 30; 94 S Ct 2098; 40 L Ed 2d 628 (1974), the Court held that a challenge based on "the very power of the State to bring the defendant into court to answer the charge brought against him" may survive a guilty plea.[3] In contrast to the coerced confession and "curable" tainted indictment alleged in *McMann* and *Tollett* respectively, the due process right raised in *Blackledge* is "markedly different" in that " 'its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial' ". *Blackledge,* 31, quoting *Robinson v Neil,* 409 US 505, 509; 93 S Ct 876; 35 L Ed 2d 29 (1973).

The *Blackledge* distinction was further explained in *Menna v New York,* 423 US 61; 96 S Ct 241; 46 L Ed 2d 195 (1975), where the defendant pled guilty to a charge brought allegedly in violation of the Double Jeopardy Clause. The New York

---

[3] In *Blackledge,* defendant pled guilty to a felony charge brought while he was awaiting an appeal of a misdemeanor conviction based on exactly the same conduct. The Court held that the "very initiation of the [felony] proceedings against [defendant] * * * operated to deny him due process of law". 417 US 30-31. Once the state chose to charge the defendant with a misdemeanor, it was precluded from charging him with a more serious crime based on the same behavior.

Court of Appeals, relying on *Tollett,* held that defendant's right to bring his double jeopardy claim was "waived" by his plea. In a per curiam opinion, the Supreme Court rejected the lower court's analysis, citing *Blackledge* for the proposition that:

"Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna,* 62.

The Court went on to clarify the holdings of the earlier guilty plea cases:

"Neither *Tollett v Henderson,* 411 US 258 (1973), nor our earlier cases on which it relied, *e.g., Brady v United States,* 397 US 742 (1970), and *McMann v Richardson,* 397 US 759 (1970), stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations. If they did so hold, the New York Court of Appeals might be correct. However, in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases, 411 US 266. The point of these cases is that a counseled plea of guilty is an admission of *factual* guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, *the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim." Menna,* 62-63, fn 2. (Emphasis changed.)

Thus, where the claim is one that the state may

not prosecute regardless of defendant's factual guilt, a guilty plea does not waive the right to subsequently raise that claim.

A literal interpretation of the language of *Menna* and *Blackledge* might allow a defendant to preserve a wide variety of defenses in spite of his guilty plea.[4] However, the spirit of those cases, and respect for the state's interest in the finality of conviction and judicial economy as reflected in the guilty-plea procedure, undercuts the wisdom of such a construction. Further, the underlying rationale of the guilty plea in many cases is the notion of bargain and exchange.[5] When a defendant pleads guilty he gives up a series of important rights, including the right to a jury trial, the right to confront accusers and present witnesses, and the right to remain silent. In exchange, he may be convicted of a lesser crime or receive a shorter sentence. Courts should be hesitant to allow a defendant to upset a bargain by which he knowingly and intelligently admitted his guilt.

In light of these functions of the guilty plea in the criminal justice system, the distinction implicit in *Menna* and *Blackledge* and that underlying the

---

[4] For example, reversal of a conviction on the grounds of an invalid search and seizure is "perfectly consistent with a recognition that the defendant is, in fact, guilty. Thus, it may be argued that, unlike some other claims, Fourth Amendment claims are not undercut by a guilty plea in which guilt is solemnly admitted". *Lefkowitz v Newsome*, 420 US 283, 296, fn 3; 95 S Ct 886; 43 L Ed 2d 196 (1975) (White, J,, dissenting). Further, if the only evidence against defendant is that which has been invalidly seized, "the charge is one which the State may not constitutionally prosecute". *Menna*, 63, fn 2. Yet a number of courts, including the Michigan Court of Appeals, have held that a plea of guilty bars a subsequent Fourth Amendment challenge. See, *e.g., United States v Cox*, 464 F2d 937 (CA 6, 1972); *People v Riley*, 88 Mich App 727; 279 NW2d 303 (1979) *(nolo* plea); *People v Hill*, 86 Mich App 706; 273 NW2d 532 (1978) *(nolo* plea). Under the test enunciated in this opinion, those decisions would be approved.

[5] In the instant case, defendant pled guilty of perjury and attempted delivery of heroin. In exchange, the prosecutor moved to dismiss the charge of delivery of heroin.

"complete defense" language of *Alvin Johnson*
would insulate only a narrow class of rights
against a waiver by plea. Only those rights and
defenses which reach beyond the factual determi-
nation of defendant's guilt and implicate the very
*authority* of the state to bring a defendant to trial
are preserved.[6] Examples include: the prohibition
against double jeopardy, *Menna;* the right to chal-
lenge the constitutionality of the statute under
which one is charged, *Journigan v Duffy,* 552 F2d
283 (CA 9, 1977); the challenge that a charge is
brought under an inapplicable statute, *People v
Beckner,* 92 Mich App 166; 285 NW2d 52 (1979).[7]
These defenses are "similar to the jurisdictional
defenses", *Alvin Johnson,* 444, in that they involve
the right of the government to prosecute the de-
fendant in the first place. Such rights may never
be waived.

In contrast, those rights which are subsumed in
a guilty plea relate to a different aspect of govern-
ment conduct in the criminal process. When a
defendant pleads guilty, he waives his right to a
trial. Therefore, he necessarily gives up all the
rights and challenges associated with that trial.
Thus, important safeguards relating to the *capac-
ity* of the state to prove defendant's factual guilt,
and those regulating the prosecution's conduct at
trial are among those defendant waives when he
pleads guilty. These rights, which essentially re-
late to the gathering and presentation of evidence,
are lost even if a successful challenge would pro-

---

[6] See *People v Hall,* 97 Mich App 143; 293 NW2d 742 (1980).

[7] See also *People v Webb,* 89 Mich App 50; 279 NW2d 573 (1979),
where the Court of Appeals held that defendant's plea of guilty did
not waive his right to object to the failure to hold a revocation
hearing before his youthful trainee status was revoked. The court
seemed to apply a quasi-jurisdictional test to reach its result; it noted
that without a hearing, criminal charges could not be reinstated
against the defendant.

vide a "complete defense" by in effect rendering
the state unable to continue with the prosecution.
For example, under this test, the right to chal-
lenge the legality of a search which produced the
evidence against the defendant[8] would not survive
a guilty plea.[9]

## II

Under the test outlined, White's claim of entrap-
ment is not waived by his plea of guilty.

In *People v D'Angelo,* 401 Mich 167, 179, 182;
257 NW2d 655 (1977), we stressed the fact that
entrapment is a conceptually unique defense:

"When an accused claims entrapment he is asserting,
in essence, entitlement to the benefit of a judicial policy
that his claim, if true, *is a bar to the prosecution of the
case.* His claim does not *involve an assessment of guilt
or innocence and, in fact, is irrelevant to it.* It is in that
respect that the entrapment claim is unique and distin-
guishable from the more common defenses in criminal
cases such as alibi, insanity, self-defense, lack of specific
intent and the like, which assert the absence of one or
more elements of the crime charged and involve there-
fore the assessment of guilt or innocence. The defense
of entrapment is not interjected to establish the absence
of an essential element of the crime but to present facts

---

[8] Therefore, we disagree with the conclusion in *Alvin Johnson* that
defenses relating to "failure to suppress illegally obtained evidence
without which the people could not proceed" are not waived by a
guilty plea. See, however, *People v Riley, supra,* 732, where Judge
RILEY, dissenting in part, argues convincingly that forcing a defen-
dant to go to trial merely to preserve such a Fourth Amendment
challenge undercuts the goal of judicial economy.

This analysis intimates no opinion regarding the propriety of the
qualified (conditional) plea procedure in which the defendant and
prosecutor agree that certain specified issues may be preserved for
appeal as part of the plea agreement.

[9] See also *People v Hall, supra,* where the Court of Appeals held
that defendant's failure to object to a lack of a preliminary examina-
tion before he pled guilty barred him from raising the issue on
appeal.

collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by enforcement officers in order to get a conviction.

\* \* \*

"Essentially, a hard analysis of each entrapment case invariably leads to the conclusion that *the accused is affirmatively alleging that, even if culpable, he should be insulated from prosecution due to the impropriety of the government conduct.* The challenge focuses exclusively upon the nature of the police conduct which, if improper, will not be mitigated, justified or excused in any fashion by the disposition of the accused." (Emphasis added.)

At the heart of this judicially created defense is the policy that

"law enforcement conduct which essentially manufactures crime is a corruptive use of governmental authority which, when used to obtain a conviction, taints the judiciary which tolerates its use. It is a practice which relies for its success upon judicial indifference, if not approval, and it must be deterred. Its deterrence is a duty which transcends the determination of guilt or innocence in a given case and stands ultimately as the responsibility of an incorruptible judiciary." *D'Angelo,* 174.

In Michigan, these policy considerations are emphasized by the adoption of the objective test of entrapment, which focuses upon the propriety of government conduct with respect to the criminal activity rather than upon defendant's "predisposition" to commit the crime.[10]

Thus, like the protected class of rights defined in *Menna,* the question of factual guilt is irrelevant

[10] Under the objective test as defined in Michigan, defendant need not admit guilt to raise an entrapment claim. *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977).

to the entrapment defense. The accused asserting
the entrapment claim does not dispute participa-
tion in the criminal act, but rather challenges the
authority of the state to punish that activity. Also,
like the double jeopardy claim in *Menna,* entrap-
ment "stand[s] in the way of conviction, [even] if
factual guilt is validly established". 423 US 63, fn
2. Further, in that it focuses the attention of the
court upon the illegal use of the power of govern-
ment to gain convictions, and tests "whether the
actions of the police were so reprehensible under
the circumstances", *People v Turner,* 390 Mich 7,
22; 210 NW2d 336 (1973), that defendant should
not have been brought to trial in the first place,
the entrapment claim is distinguishable from
those defenses which relate solely to the state's
ability to prove its case.

Equally important conceptually, entrapment in
essence precedes the jurisdictional defenses in the
criminal process. Whereas the jurisdictional defen-
ses operate to prevent a *trial* from taking place,
entrapment assumes that, without police involve-
ment, the *crime* itself would not have taken
place.[11] If a defendant may preserve, in the face of
a guilty plea, the right to challenge the govern-
ment's authority to bring him to trial, he should
be able to similarly preserve a claim based on
government involvement in the creation of the
crime which eventually leads to the trial. Thus,
especially as it is defined in Michigan, entrapment

[11] In this sense, entrapment falls between a challenge based on the
unconstitutionality of the statute under which defendant is charged
and one based on double jeopardy. When the unconstitutionality of
the statute is questioned, defendant is alleging that the act he
committed is not a crime. *Journigan v Duffy,* 552 F2d 283 (CA 9,
1977). When defendant raises a double jeopardy claim, he does not
dispute the commission of a crime but protests the state's ability to
charge him for the act. In the case of entrapment, defendant agrees
that there has been criminal activity but alleges that but for imper-
missible police involvement, there would have been no crime.

is a defense that should not be barred under this Court's interpretation of the plea-waiver doctrine.

For all the foregoing reasons, I concur with Justice KAVANAGH's holding that defendant White may appeal the denial of his entrapment claim in spite of the fact that he pled guilty to the substantive offense of attempted delivery of heroin.[12]

## III

For purposes of judging whether, under the circumstances of a particular case, a defendant was entrapped, Michigan courts have applied the objective test as stated by Justice Stewart in his dissent in *United States v Russell*, 411 US 423, 445; 93 S Ct 1637; 36 L Ed 2d 366 (1973):

> "But when the agents' involvement in criminal activities goes *beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it,* then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." (Emphasis added.)

[12] Thus, the reasoning of *People v Bonner*, 102 Mich App 514; 302 NW2d 253 (1980), which held that the right to raise an entrapment claim is waived by a guilty plea, is specifically disapproved.

See also *Eaton v United States*, 458 F2d 704 (CA 7, 1972), and *Williams v State*, 437 SW2d 82 (Mo, 1969), where both courts, essentially without analysis, also held that a plea of guilty precludes appeal on the entrapment issue. In these cases, the courts used the subjective test for entrapment, which focuses on defendant's "predisposition" to engage in criminal activity. Even if the difference in the test used would not lead to a different result, we disagree with the holdings of these cases.

As determined by my colleague, the trial judge in the instant case did not properly apply this entrapment test because he appeared to place undue emphasis upon defendant's propensity to commit the crime. I agree. However, I cannot agree that the facts of this case compel the conclusion that defendant was entrapped as a matter of law.

Under the objective test, the defendant bears the burden of proving entrapment. *D'Angelo.* In the instant case, the proofs showed that on three separate occasions, the undercover police officer sought out defendant White in an effort to buy narcotics from him. The officer also provided the transportation which enabled defendant to obtain the drugs for the sale.[13] However, according to the police officer's testimony, before arrangements were made for this ride to Detroit, he gave the defendant an opportunity to cancel the proposed drug transaction and return the money advanced, and White refused, stating that he would still like to obtain the heroin for the officer.

This is not a case where the police induced defendant to commit the crime by means of such impermissible activities as pleas of desperate illness, appeals based on sympathy, pity or friendship, *Turner,* offers of exorbitant amounts of money,[14] or the use of sexual favors, *People v Wisneski,* 96 Mich App 299; 292 NW2d 196 (1980). See *Grossman v State,* 457 P2d 226 (Alas, 1969), modified in *Pascu v State,* 577 P2d 1064 (Alas, 1978). Based on the record before us, the police conduct did not go beyond the mere offering of an opportunity to engage in criminal activity. The

---

[13] Apparently this ride was obtained at the defendant's request.

[14] The price paid to defendant for the heroin was $65 per gram. White was given a total of $200 to cover the cost of three grams and gasoline for the trip to Detroit.

actions of the undercover agent in attempting several times to arrange the heroin sale and in providing the necessary transportation were not "so reprehensible under the circumstances", *Turner,* as to amount to entrapment as a matter of law.

Accordingly, in addition to reinstating defendant's conviction of perjury without prejudice to his filing a motion seeking post-conviction relief on the ground of ineffective assistance of counsel, I would affirm defendant's conviction of attempted delivery of heroin.

RYAN, J. Although I have signed the opinion prepared by Justice KAVANAGH and concur fully in its reasoning and result, I concur as well with Parts I and II only of Justice MOODY's opinion.