PEOPLE v LONGUEMIRE

Docket No. 77-1156. Submitted April 11, 1978, at Lansing.—Decided December 5, 1978.

John E. Longuemire, Jr., was charged with perjury, based upon his testimony in a prior trial in which he was convicted of breaking and entering and larceny. Testifying in that former trial on his own behalf, he had denied that he had committed any breaking and entering. Longuemire moved to quash the information, and the Bay Circuit Court, Leon J. Dardas, J., granted the motion, holding that the perjury prosecution constituted double jeopardy. The people appeal. *Held:*

1. The defendant was not subjected to double jeopardy because the alleged perjury and the breaking and entering were clearly separate transactions.

2. A distinction must be drawn between perjury as to basic adjudicative facts and perjury as to issues of ultimate fact or law mixed with fact. Where the defendant's false testimony was in regard to ultimate fact questions such as a denial of guilt of the crime charged or of a legal element of the crime, a prosecution for perjury is not permissible because the possibility of such a prosecution discourages the defendant from exercising his right to testify, without substantially benefitting the administration of justice.

Affirmed.

1. WITNESSES—CRIMINAL LAW—TESTIMONY BY DEFENDANT—PERJURY.

A criminal defendant taking the stand on his own behalf does not have a license to lie, but he must be protected from threats of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 60 Am Jur 2d, Perjury § 50.

75 Am Jur 2d, Trial § 305.

81 Am Jur 2d, Witnesses § 523 *et seq.*

[2, 3] 60 Am Jur 2d, Perjury §§ 8-11.

Determination of materiality of allegedly perjurious testimony in prosecution under 18 USCS §§ 1621, 1622, 22 ALR FED 379.

Incomplete, misleading, or unresponsive but literally true statement as perjury. 69 ALR3d 993.

perjury prosecutions which unnecessarily chill his right to testify.

2. PERJURY—CRIMINAL LAW—ADJUDICATIVE FACTS—ULTIMATE FACTS —RIGHT TO TESTIFY.

A distinction must be drawn between perjury as to basic adjudicative facts and perjury as to issues of ultimate fact or law mixed with fact in determining whether a perjury charge unnecessarily discourages a defendant from exercising his right to testify.

3. PERJURY—CRIMINAL LAW—ULTIMATE FACTS—RIGHT TO TESTIFY.

A prosecution for perjury based upon a criminal defendant's false testimony regarding ultimate fact questions, such as statements as to the noncommission of the crime charged or a legal element of the crime, is constitutionally impermissible because the possibility of such a prosecution discourages the defendant from exercising his right to testify without substantially benefitting the administration of justice.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *Peter F. Dahm,* Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and BRONSON and CYNAR, JJ.

DANHOF, C.J. Defendant was charged with perjury, see MCL 750.422; MSA 28.664,[1] on the basis of his testimony at a prior trial, in which he was defending against charges of breaking and entering, larceny over $100 and larceny in a building. On February 25, 1976, defendant was found guilty

---

[1] The statute reads:

"Any person who, being lawfully required to depose the truth in any proceeding in a court of justice, shall commit perjury shall be guilty of a felony, punishable, if such perjury was committed on the trial of an indictment for a capital crime, by imprisonment in the state prison for life, or any term of years, and if committed in any other case, by imprisonment in the state prison for not more than 15 years."

of these larceny and burglary charges.[2] The per-
jury information was in three counts. Count one
alleged perjury by defendant's testimony as fol-
lows: "I didn't commit that B & E. I didn't. I ain't
never broke into people's houses." The second
charged perjury by answering "no" to a question
whether defendant had committed a breaking and
entering in the neighborhood of a witness, Mrs.
Smith. The last count complained of knowing falsi-
fication by the statement: "I didn't commit no B &
E. I'm innocent of that. If I ever did something
wrong, I didn't do that. I didn't commit it."

The trial court granted defendant's motion to
quash the information relying "solely on the au-
thority of *People v Taylor,* 34 Mich App 84 [190
NW2d 720] (1971)", and holding the perjury prose-
cution to constitute double jeopardy.

We disagree that the prosecution of this charge
places defendant in double jeopardy for the reason
that the alleged perjury and breaking and enter-
ing were clearly separate transactions. *People v
White,* 390 Mich 245; 212 NW2d 222 (1973). How-
ever, we affirm the quashing of the information for
the reasons stated below.

Any threat of prosecution for perjury based on
testimony by the defendant in a criminal proceed-
ing raises a potential conflict of interest. On the
one hand, the fear of collateral repercussions from
testifying may discourage an accused from taking
the stand on his own behalf. *Scott v United States,*
135 US App DC 377; 419 F2d 264 (1969). A defend-
ant's right to testify on his own behalf is of consti-

---

[2] As a habitual offender, he was sentenced to serve concurrent
terms of 5 to 22-1/2 years, 3 to 7-1/2 years and 2-1/2 to 6 years
imprisonment. However, in *People v Longuemire,* 77 Mich App 17, 24;
257 NW2d 273 (1977), the Court, *sua sponte,* vacated defendant's
conviction and sentence for larceny over $100 since conviction for
that crime and for larceny in a building violated double jeopardy on
the facts of the case.

tutional magnitude, *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975), and is expressly safeguarded by our own court rules, GCR 1963, 785.7 (1) (g) (x). On the other hand, excusing defendants from liability for perjury might encourage false testimony and thereby diminish the integrity of our factfinding system. In a related context, the United States Supreme Court recently held that a criminal defendant has no protected right to commit perjury. *United States v Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978).

As a rule of law to resolve this conflict, we hold that although a criminal defendant taking the stand on his own behalf does not have a license to lie, *United States v Grayson, supra,* he must be protected from threats of perjury prosecutions that *unnecessarily* chill his right to testify. *Cf. United States v Jackson,* 390 US 570; 88 S Ct 1209; 20 L Ed 2d 138 (1968).

In determining whether a perjury information unnecessarily discourages a defendant from exercising his right to testify, a careful distinction must be drawn between perjury as to basic adjudicative facts and perjury as to issues of ultimate fact or law mixed with fact. Basic adjudicative facts pertain to who did what, where, when, how and with what motive or intent. Davis, Administrative Law, § 7.03, p 160. They may be proved for both substantive and impeachment purposes. Ultimate fact questions concern the legal definitions and effects ascribed to the basic facts or combinations of basic facts as found.[3] At common law, it is

[3] Ultimate facts encompass statements as to noncommission of the crime charged or a legal element of the crime. Thus, statements such as "I didn't bribe Mr. X" or "I didn't break into that house" are statements of ultimate facts which cannot be used as a basis for perjury. Conversely statements which indicate actual details of the crime charged such as "I didn't give Mr. X $50,000" or "I didn't force the door open" are adjudicative facts which can form the basis for a perjury charge.

doubtful that false testimony as to the latter can ever be a basis for a perjury charge, since a court would most likely construe it as mere opinion or as a conclusion of law beyond the realm of common knowledge. See 18 Mich Law & Practice, Perjury, § 1, p 458. But see *Hoch v People,* 3 Mich 552 (1855); *cf. Guilty Plea Cases, supra,* (for purposes of informing defendant of the nature of the charges against him, it can be expected that most persons will understand the generic term "breaking and entering"). To the extent such a charge is valid at common law, it is constitutionally impermissible as it discourages defendants from exercising their rights to testify, without substantially benefiting the administration of justice. The chance that a defendant will lie about the ultimate fact at issue in his case does not significantly threaten the integrity of the fact-finding process. Knowing the primary historical events, the fact-finder can judge guilt or innocence on its own. The discouraging effect of potential perjury liability in such a situation, while not overwhelming,[4] is "unnecessary and therefore excessive". *Cf. United States v Jackson, supra,* 582.

*United States v Grayson, supra,* is not inconsistent with this approach. That case dealt with the validity of sentence enhancement for perjury rather than separate and subsequent liability for perjury. Hence, the decision implicates a different policy choice; rather than seeking to ensure the integrity of the fact-finding process, the *Grayson* Court was concerned with the relevancy of a defendant's mendacity to sentencing. Moreover, the

---

[4] The risk of conviction for misstatements of ultimate fact may be slight. Not only are such statements likely to be construed as opinion, but also, given the mixture of law and fact inherent in such conclusions, the people would bear a heavy burden of proving the defendant knew the statement was false when he made it.

alleged perjury in *Grayson* went to basic adjudicative facts rather than ultimate questions of fact and law. Grayson, while on trial for unlawful escape from prison, testified that he left out of fear, that another inmate had just threatened him with a large stick with a nail protruding through it, and that he had previously mentioned threats from other inmates to a prison official. He also swore that after he crossed the prison fence he discarded his prison jacket and shirt but not his trousers. This testimony was relevant to defendant's credibility and to the issue of whether defendant's escape was planned or was a spontaneous product of duress. If Grayson's testimony was false and had been believed, it could have seriously undermined the fact-finder's conclusions on those issues.

Judged by the foregoing tests, counts two and three of the information challenged in this case were properly quashed. The breaking and entering referred to in the second count was the breaking and entering with which defendant had been charged. The statement repeated in the third count was defendant's answer to his attorney's question whether he had committed that offense. Both counts are justly characterized as charges for opposing the state on the ultimate issue of defendant's guilt.

Count one presents a closer question. The statement related in that paragraph of the information had been made in response to an inquiry by defendant's attorney whether defendant had gone to a home to check it out to see if anyone else was there in order to commit the breaking and entering with which he was charged. The last sentence of defendant's answer—"I ain't never broke into people's houses"—arguably contains testimony as

to basic adjudicative fact. Nonetheless, because the major thrust of the statement was to deny an essential element of the crime and because the arguably unprotected testimony was incidental, not in response to a specific question, we construe the answer *in toto* and deny perjury liability on the basis of any of the assertions therein.

By our resolution of these issues, we have obviated the need to discuss other errors claimed by defendant.

Affirmed.