PEOPLE v BUIE

Docket No. 62243. Submitted November 3, 1982, at Grand Rapids.—
Decided May 18, 1983.

Jerry Buie was charged in Kalamazoo Circuit Court with perjury
in a court action. Defendant moved to quash the information.
The court, Charles H. Mullen, J., granted the motion. The
people appeal. *Held:*

1. The trial court erred in quashing the information on the
basis that the defendant's allegedly perjurious statement per-
tained to an ultimate fact because it was a statement of
noncommission of the crime charged. A statement pertaining to
an ultimate fact is a statement denying a legal conclusion
drawn from the facts. Defendant's allegedly perjurious testi-
mony pertained to an adjudicative fact. Thus, the trial court's
reasons for granting the motion to quash do not support its
ruling.

2. Although the trial court erred in quashing the information
for the reasons given, defendant's prosecution for perjury is
barred on other grounds. The perjury charge essentially asks a
second jury or judge to determine fact and credibility issues
already decided in the defendant's favor in a previous trial. To
uphold the perjury charge against defendant might dissuade
future truthful but timid defendants from testifying in future
actions. The trial court's order quashing the information is
affirmed.

Affirmed.

MacKenzie, P.J., dissented. She states that this perjury
prosecution was not undertaken out of spite, to punish defen-
dant for testifying in his own behalf, or to deter future defen-

References for Points in Headnotes

[1, 2, 4, 5, 8] 60 Am Jur 2d, Perjury § 62.

[1] 81 Am Jur 2d, Witnesses § 38.

[3] 60 Am Jur 2d, Perjury § 8.

[4, 5, 8] 60 Am Jur 2d, Perjury § 51.

[5, 7] 21 Am Jur 2d, Criminal Law §§ 321, 325.

Modern status of doctrine of res judicata in criminal cases. 9
ALR3d 203.

[6] 21 Am Jur 2d, Criminal Law § 244.

dants from testifying in their own behalf, that the majority bases its decision on dicta in a Michigan Supreme Court case which does not demonstrate an intent on the part of that Court to impose more severe restrictions than the rule of collateral estoppel requires, and that collateral estoppel would not bar this perjury prosection. She further states that the state's interest in truthful testimony at trials is a compelling reason for allowing a perjury prosecution where, as here, a defendant has altered his testimony to suit the occasion. She would reverse.

### OPINION OF THE COURT

1. WITNESSES — CRIMINAL LAW — TESTIMONY BY DEFENDANT — PERJURY.

   A criminal defendant taking the stand on his own behalf does not have a license to lie, but he must be protected from threats of perjury prosecutions which unnecessarily chill his right to testify.

2. PERJURY — CRIMINAL LAW — ADJUDICATIVE FACTS — ULTIMATE FACTS — RIGHT TO TESTIFY.

   A distinction must be drawn between perjury as to basic adjudicative facts and perjury as to issues of ultimate fact or law mixed with fact in determining whether a perjury charge unnecessarily discourages a defendant from exercising his right to testify.

3. PERJURY — CRIMINAL LAW — ULTIMATE FACTS — ADJUDICATIVE FACTS.

   A statement pertaining to an "ultimate fact", as that term is used in distinguishing between adjudicative facts and ultimate facts in a perjury prosecution, is a statement denying a legal conclusion drawn from the facts; adjudicative facts pertain to who did what, where, when, how and with what motive or intent.

4. PERJURY — CRIMINAL LAW — DEFENSES — ALIBI.

   A prosecution for perjury in a court is barred where the defendant's allegedly perjurious testimony occurred at a trial where the defendant was acquitted on an alibi defense and the alibi conflicted with testimony given by the defendant in an earlier trial; the perjury charge essentially asks a second jury or judge to determine fact and credibility issues already decided in the defendant's favor by the first factfinder.

DISSENT BY MACKENZIE, P.J.

5. PERJURY — CRIMINAL LAW — COLLATERAL ESTOPPEL.

   *Collateral estoppel prevents the prosecution from relitigating in a perjury prosecution a matter necessarily resolved in the defendant's favor in the criminal prosecution in which the perjury allegedly occurred.*

6. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — COLLATERAL ESTOPPEL.

   *The rule of collateral estoppel is part of the constitutional guarantee against double jeopardy enforceable against the states through the Fourteenth Amendment (US Const, Am XIV).*

7. CRIMINAL LAW — ACQUITTAL — COLLATERAL ESTOPPEL.

   *The rule of collateral estoppel, where a previous judgment of acquittal was based upon a general verdict, requires the court in the present action to examine the record of the prior proceeding, taking into account pleadings, evidence, charges and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.*

8. PERJURY — CRIMINAL LAW.

   *A prosecution for perjury in a court is not barred where the defendant's allegedly perjurious testimony occurred at a trial where the defendant was acquitted on an alibi defense, the alibi conflicted with testimony given by the defendant in an earlier trial, and the prosecution was not undertaken out of spite, to punish defendant for testifying in his own behalf, or to deter future defendants from so testifying.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Kenneth G. Walters,* Senior Assistant Prosecuting Attorney, for the people.

*Narregan Law Offices, P.C.* (by *William K. Murphy),* for defendant.

Before: MACKENZIE, P.J., and R. M. MAHER and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendant was charged with perjury in a court proceeding, MCL 750.422; MSA

---

* Circuit judge, sitting on the Court of Appeals by assignment.

28.664. Defendant moved to quash the information. The people now appeal the trial court's order granting the motion to quash.

The alleged perjury took place in defendant's trial for criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2), which resulted in his acquittal. The alleged crime had occurred on July 12, 1980, in Kalamazoo. Defendant marshaled an alibi defense and testified that he was in Flint from June 17, 1980, or June 18, 1980, until July 19, 1980, or July 20, 1980. At the preliminary examination, the people's evidence that defendant perjured himself included the record of his testimony given at an earlier trial for criminal sexual conduct arising out of a separate incident. In that proceeding, the defendant testified that he was in Kalamazoo on July 16, 1980. The people also offered the testimony of two witnesses.

The people claim that the trial court erred in quashing the information. We agree that the trial court's reasons for granting the motion to quash do not support its ruling. Nevertheless, we affirm the trial court's order on other grounds.

The trial court reasoned that under this Court's decision in *People v Longuemire,* 87 Mich App 395; 275 NW2d 12 (1978), the defendant could not be convicted of the alleged perjury. In *Longuemire,* this Court recognized that a prosecution for perjury based on the defendant's testimony rendered in defense of another criminal charge raises competing policy considerations. On the one hand, the possibility of "collateral repercussions", such as a perjury charge, could have a chilling effect on a criminal defendant's right to testify in his own behalf, a right of constitutional magnitude. On the other hand, absent the deterrent of a possible criminal prosecution for lying under oath, the

integrity of judicial fact-finding would be compromised. *Longuemire, supra,* pp 397-398. To balance these competing interests, the *Longuemire* Court adopted the following approach:

"As a rule of law to resolve this conflict, we hold that although a criminal defendant taking the stand on his own behalf does not have a license to lie, * * * he must be protected from threats of perjury prosecutions that *unnecessarily* chill his right to testify." *Longuemire, supra,* p 398. (Citation omitted.)

The Court continued:

"In determining whether a perjury information unnecessarily discourages a defendant from exercising his right to testify, a careful distinction must be drawn between perjury as to basic adjudicative facts and perjury as to issues of ultimate fact or law mixed with fact. Basic adjudicative facts pertain to who did what, where, when, how and with what motive or intent. Davis, Administrative Law, § 7.03, p 160. They may be proved for both substantive and impeachment purposes. Ultimate fact questions concern the legal definitions and effects ascribed to the basic facts or combinations of basic facts as found." *Longuemire, supra,* p 398. (Footnote omitted.)

The trial court concluded that the defendant's allegedly perjurious statement pertained to an ultimate fact because it is "a statement of noncommission of the crime charged * * *". We cannot agree.

A statement pertaining to an "ultimate fact" is a statement denying a legal conclusion drawn from the facts. The *Longuemire* Court's illustrations support this position. The Court recognized that the statement "I didn't bribe Mr. X" pertains to an ultimate fact. The statement denies that a

particular legal conclusion—bribery—may be drawn from the facts. But the statement "I didn't give Mr. X $50,000" does not pertain to an ultimate fact. It denies no legal conclusion but rather asserts the nonoccurrence of an event. The statement pertains, instead, to an adjudicative fact. See *Longuemire, supra,* p 398, fn 3.

In the present case, defendant's allegedly perjurious testimony pertained to an adjudicative fact. His testimony that he was in Flint from June 17 or 18, 1980, until July 19 or 20, 1980, does not deny a legal conclusion drawn from the underlying facts. Rather, it asserts an underlying fact, namely, that he was in Flint during that time period. It is true enough that his testimony, *in effect,* denied the commission of the offense. But the same can be said about "I didn't give Mr. X $50,000". That statement, in effect, denies the commission of the offense of bribery.

The defendant's allegedly perjurious testimony pertained to an adjudicative fact. We hold, therefore, that *Longuemire* does not preclude the defendant's prosecution for giving this testimony.

The defendant's prosecution for perjury is, however, barred on other grounds. Although the *Longuemire* ultimate fact—adjudicative fact dichotomy provides some protection against a possible perjury prosecution deterring a defendant from testifying in his own behalf, we must consider other factors as well. In *People v White,* 411 Mich 366, 379; 308 NW2d 128 (1981), the Supreme Court set forth the dangers involved when a perjury charge arises out of the defendant's testimony:

"[T]he trial process itself is the primary safeguard against inaccurate testimony. Cross-examination, rebuttal and impeachment are elements of the trial process intended to expose untruthful testimony. It is the func-

tion of the trier of fact to assess credibility as well as to determine the facts.

"An overzealous prosecutor might bring a subsequent charge of perjury simply to ask a second jury or judge to determine fact and credibility issues already decided in the defendant's favor by the first fact finder or in an attempt to ask a second judge to augment a sentence the prosecutor found disappointing. The very chance of a spiteful perjury prosecution might dissuade a truthful but timid defendant from testifying at all."

The circumstances in *White* did not suggest the presence of a "spiteful perjury prosecution". White's alleged perjury occurred at his preliminary examination. Because the allegedly perjurious testimony did not occur in a trial, "[t]here was no prior determination that White's story was the truthful version and, there having been no trial, the prosecutor cannot be said to be seeking a more satisfactory result by presenting the same issues to a second jury or judge". *People v White, supra,* pp 379-380.

The present case, however, is plagued by the very evils which the Supreme Court found absent in *White*. First, the alleged perjurious testimony occurred at a trial on another criminal charge. As such, the jury was responsible to assess the credibility of the testimony and to determine the facts. Second, the prosecutor tested the truthfulness of the defendant's testimony thoroughly. On cross-examination, he attempted to impeach the defendant by evidence of prior convictions and through use of the record of defendant's testimony in an earlier criminal trial that he was in Kalamazoo on July 16, 1980. In addition, he placed on the stand a rebuttal witness who testified that she saw defendant in Kalamazoo during the period defendant said he was in Flint. Finally, we believe that the jury, in acquitting defendant, must have believed

defendant's testimony that he was in Flint from June 17 or 18, 1980, until July 19 or 20, 1980. This alibi was the defendant's primary defense. The defendant offered the testimony of three witnesses, himself included. Each witness testified for only one purpose: to establish that the defendant was not in Kalamazoo when the alleged sexual assault occurred. Moreover, the prosecutor told the jury, in his rebuttal argument, that defendant's only defense was his alibi:

"[The defendant's] whole defense is based upon his testimony that he was out of the * * * City of Kalamazoo.

* * *

"I submit to you, ladies and gentlemen, that if you can't believe Jerry Buie was not—or was—if you can't believe that Jerry Buie was not in Flint, then he has no defense."

Thus, the prosecutor placed before the jury the precise issue that the people seek to relitigate in the perjury prosecution. We believe that, as the parties framed it, the issue of defendant's guilt rested upon the credibility of his testimony that he was in Flint when the sexual assault occurred. By acquitting the defendant, the jury must have assessed the defendant's credibility and determined the fact of his whereabouts in the defendant's favor.

The circumstances of this case present all the dangers that *White* attributed to a perjury charge arising out of a defendant's testimony during his trial on another charge. The perjury charge, essentially, asks "a second jury or judge to determine fact and credibility issues already decided in the defendant's favor by the first fact finder * * *".

*White, supra,* p 379. If we uphold this defendant's perjury charge we will certainly dissuade future "truthful but timid" defendants from testifying. See *White, supra,* p 379. We decline to do so.

Accordingly, we affirm the trial court's order quashing the information.

Affirmed.

MACKENZIE, P.J. *(dissenting).* I respectfully dissent. I agree with the majority that defendant's prosecution for perjury is not barred by the rule stated in *People v Longuemire,* 87 Mich App 395; 275 NW2d 12 (1978). However, the majority, relying on dicta from *People v White,* 411 Mich 366, 379; 308 NW2d 128 (1981), concludes that a perjury prosecution is barred here because it would allow the prosecution to relitigate issues necessarily resolved in defendant's favor in the prosecution for criminal sexual conduct and because such prosecutions might deter defendants from testifying in their own behalf. I cannot agree.

Collateral estoppel prevents the prosecution from relitigating in a perjury prosecution a matter necessarily resolved in defendant's favor in the criminal prosecution in which the perjury allegedly occured. *United States v Williams,* 341 US 58; 71 S Ct 595; 95 L Ed 747 (1951); *People v Albers,* 137 Mich 678; 100 NW 908 (1904); Anno: *Acquittal As Bar to Prosecution of Accused for Perjury Committed At Trial,* 89 ALR3d 1098. In *Ashe v Swenson,* 397 US 436, 444; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the Court held that the rule of collateral estoppel is part of the constitutional guarantee against double jeopardy enforceable against the states through US Const, Am XIV, and the Court explained how the rule should be applied as follows:

"Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" (Footnote omitted.)

In the criminal sexual conduct prosecution, defendant was accused of having committed the crime on or about July 12. The perjury charge arises out of defendant's testimony concerning his whereabouts on July 16. As a rational jury could have acquitted defendant without accepting his testimony concerning his whereabouts on July 16, collateral estoppel did not bar the perjury prosecution. The dicta in *White* on which the majority relies does not demonstrate an intent on the part of our Supreme Court to impose more severe restrictions on perjury prosecutions than the rule of collateral estoppel requires. *White* neither explicitly nor implicitly overruled *Albers,* and *Albers* allows a perjury prosecution under the facts presented here.

The *White* Court noted the danger that the chance of a spiteful perjury prosecution might deter defendants from testifying in their own behalf, but the result in *White* shows that this danger will not always prevent a perjury prosecution. Here, in yet another criminal prosecution, defendant gave testimony as to his whereabouts on July 16 which was completely inconsistent with the testimony out of which the perjury charge arises. This circumstance demonstrates that this perjury prosecution was not undertaken out of

spite, to punish defendant for testifying in his own behalf, or to deter future defendants from so testifying. The state's interest in truthful testimony at trials is a compelling reason for allowing a perjury prosecution where, as here, a defendant has altered his testimony to suit the occasion. *White* does not bar this prosecution.

I would reverse.