OPINION OF THE COURT
Joseph Fisch, J.
Defendant, indicted for the crimes of robbery in the first *91 and second degrees, assault in the second degree, and related offenses, was convicted after a jury trial, of robbery in the first degree. The essence of the charges was that the defendant, armed with a knife, and aided by another unapprehended male, armed with a gun, robbed the complainant on an elevated subway platform, and during the commission of such robbery, stabbed him.
At trial, the complainant and two transit police officers, on duty and assigned to said location that evening, all testified to substantially the same story, to wit:
Defendant, and the unapprehended male, were riding the No. 2 train, as was the complainant. Defendant and his companion raised their jacket hoods over their faces as they approached the complainant. All exited the train at the Pelham Parkway Station. A scuffle broke out as defendant, armed with a knife, and his accomplice, armed with a gun, struggled with the complainant while attempting to remove his jacket, striking him several times and stabbing him. When the police officers who had observed the attack approached, both men fled. The defendant was later apprehended by another officer in response to a radio transmission by the transit policemen, and returned to the area of the crime scene. He was identified there by the complainant and one of the two transit police officers. The knife was recovered the next day.
Defendant testified at trial that he was not on the elevated subway platform at the time of the incident but in the street below with one "Vanessa”, a girl he had just met and attempted to "pick up”. He testified that he did not ride the No. 2 train that evening, was not in the company of a male companion, did not assault, rob or stop the complainant, nor even encounter him before. The defendant admitted he fled from the police to avoid capture, but testified he did so because he was in possession of marihuana which he had purchased earlier that evening. He admitted providing the police with a false name and address upon apprehension. He denied possessing a knife.
The defendant was then confronted with his sworn testimony before the Grand Jury. He admitted at trial that he had testified at the Grand Jury as follows: That he and his friend Marcus were riding the No. 2 train that evening when they observed the complainant and decided to take his coat. He told the victim to remove his coat, and that when he at *92 tempted to flee they "backed him up [and] told him to take off his coat”. Defendant further testified in the Grand Jury that he struck the complainant several times, told him to remove his coat and when the police approached, he and Marcus ran separate ways. Defendant admitted at trial that he gave this testimony before the Grand Jury, but testified that such testimony was false and resulted from pressure by his attorney to admit to some guilt, in exchange for which he claimed he was told he would ~get probation".[1]
Prior to sentencing, the prosecutor citing United States v Dunnigan (507 US -, 113 S Ct 1111 [1993]) and United States v Grayson (438 US 41 [1978]) urged the court to "enhance” defendant’s sentence, i.e., impose a higher sentence than it would otherwise have imposed based on the defendant’s perjury. Defense counsel opposed this motion, contending that his client had testified truthfully and that the State constitutional guarantees of due process and the right to testify in one’s own behalf would be violated by sentence enhancement.

[* *]

[2]

In the case at bar, defendant, when arrested, gave a false name and invalid address. In the Grand Jury, under oath, he admitted the robbery, but denied possession of any weapon or knowledge that the victim was stabbed. Later defendant, again under oath, at his trial, denied any involvement in the crime and accused his Legal Aid attorney of the serious crime of suborning perjury. His current counsel, in the conscientious exercise of his assignment, understandably argues that his client says he told the truth at trial and in any event, this court should adopt the minority view of the State courts of this country that sentence enhancement based on a defendant’s perjury is unconstitutional.
Although some 21 States,[3] relying on Grayson (supra), have *93 held that a State sentencing court may permissibly consider a defendant’s perjury as relevant to the prospect of his rehabilitation, in accordance with specified safeguards, the defense urges this court to adopt the view of three States (Louisiana, Massachusetts and North Carolina) which have held such consideration in imposing sentence to be improper.[4] One State: Florida,[5] has, as of this writing, a conflict in the case law.
Since New York’s sentencing scheme is indeterminate, defense counsel urges that this be considered by the court in adopting the minority position among the several States that any consideration by the sentencing court of a defendant’s perjury during his trial testimony as a factor in sentencing: (1) is not authorized; (2) violates defendant’s right to due process of law since the procedural safeguards of a formal trial for perjury are absent; and (3) impermissibly chills the defendant’s right to testify in his own behalf. For the reasons set forth herein, the court rejects these arguments and finds an enhanced sentence is appropriate in this particular case.
The issues before this court, as in People v Marchese (supra), are as follows:
(1) Is this court authorized to consider a defendant’s perjury at trial as a factor in enhancing his sentence?
(2) Does the consideration of a defendant’s trial perjury by the sentencing court in enhancing sentence, within statutory prescribed limits, impermissibly chill the defendant’s exercise of his right to testify?
(3) Does the enhancement of a defendant’s sentence because of his perjury at trial violate due process of law since the procedural safeguards of a formal trial for perjury are absent?
(4) If such enhancement is constitutional, what are the criteria to which the sentencing Judge must adhere in imposing an enhanced sentence consistent with due process?
(5) Is this an appropriate case for sentence enhancement?
*94 [**]
As noted above, defense sets forth two constitutional arguments against this court’s imposition of an enhanced sentence, to wit,, that sentence enhancement (1) chills the defendant’s constitutional right to testify and (2) denies him due process because the procedural safeguards of a trial for perjury are absent. These contentions are without merit. Sentence enhancement based on defendant’s trial perjury does not impermissibly chill his exercise of the right to testify in his own behalf, since it is clear that the constitutional right to testify is not a license to commit perjury. (United States v Dunnigan, 507 US —, 113 S Ct 1111 [1993], citing United States v Grayson, supra; Nix v Whiteside, 475 US 157, 173 [1986]; United States v Havens, 446 US 620, 626 [1980].) "The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath * * * This view * * * is confirmed by the unquestioned constitutionality of perjury statutes [citations omitted]. Further support for this is found in an important limitation on the defendant’s right to the assistance of counsel: Counsel ethically cannot assist his client in presenting what the attorney has reason to believe is false testimony. (See Holloway v. Arkansas, 435 U.S. 475, 480 n. 4 (1978); ABA Project on Standards for Criminal Justice, The Defense Function 7.7(c), p. 133 (Compilation 1974).” (United States v Grayson, supra, at 54.)
Nor is sentence enhancement a denial of due process because the defendant was not formally charged and tried for the perjury. Due process is ensured by the basic safeguards required under United States v Grayson (supra). First, the perjury must have been committed in the presence of the sentencing Judge. Second, the court must find that the perjury involved basic adjudicative facts rather than issues of ultimate fact (or law and fact). "Basic adjudicative facts pertain to who did what, where, when, how and with what motive or intent.” (People v Longuemire, 87 Mich App 395, 398, 275 NW2d 12, 14 [1978], citing 18 Mich Law & Practice, Perjury, § 1, at 458.) Ultimate fact questions concern legal definitions. If a person were asked if he had "committed a breaking and entering” and he answered falsely, "at common law, it is doubtful that [such a falsehood could] ever be a basis of a perjury charge, since a court would most likely construe [the answer] as mere opinion or as a conclusion of law beyond the realm of common knowledge”. (People v Longuemire, supra, 87 Mich App, at 398-399, 275 NW2d, at 14.)
*95 Third, the evidence of the perjury must be material to the issues in the case in which defendant perjured himself. Finally, the defendant’s perjured trial testimony is only one factor the court must consider with all relevant facts in light of sentencing goals. (See, State v James, 109 NM 278, 784 P2d 1021 [1989], citing United States v Grayson, supra; see also, People v Redmond, 29 Cal 3d 904, 176 Cal Rptr 780, 633 P2d 976 [1981].)
To summarize, this court reaffirms its holding in Márchese (supra) that it is authorized to consider a defendant’s trial perjury in enhancing a defendant’s sentence under New York’s indeterminate sentencing laws and such enhancement does not impermissibly chill a defendant’s right to testify. Such enhancement does not deny a defendant due process of law if imposed in accordance with the safeguards mandated in Grayson (supra).
Applying these safeguards, the court concludes that this case is an appropriate one for sentence enhancement for the following reasons.
This court heard the defendant’s testimony, which concerned adjudicative facts: defendant’s forcible, unlawful taking of the complainant’s jacket which defendant admitted under oath in the Grand Jury but denied under oath at trial. The prosecutor persuasively asserts these are facts about which defendant is not likely to be mistaken. The defendant was convicted by a jury of the crime of robbery in the first degree, which defendant under oath at trial denied committing. The defendant’s guilt of the crime was established beyond a reasonable doubt by the testimony of the victim and two police officers as well as the defendant’s own testimony in the Grand Jury. The question arises as to whether the proof of defendant’s apparent perjury is sufficiently strong and the perjury so material that enhancement is warranted. In Dunnigan (supra) defendant categorically denied any involvement with illegal drugs. On the Government’s case-in-chief, five witnesses testified to personal observations of defendant’s illegal drug trafficking, four of whom admitted complicity in these enterprises.
As the court noted in Dunnigan (supra), even under mandated enhancement for wilful obstruction of justice, not every accused who testifies and is convicted will be found to have perjured himself. The court is mindful of the caveat of the United States Supreme Court that a sentencing court is not *96 required to enhance "in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false.” (United States v Grayson, supra, at 55.) However, there is overwhelming evidence that the defendant in the case at bar lied under oath both in the Grand Jury and at trial.
The wealth of detail to which this defendant swore establishes his wilful perjury beyond a reasonable doubt in testifying to adjudicative facts material and relevant to the charges at issue. In the Grand Jury he swore that he and one Marcus were on the elevated subway platform, rode the No. 2 train, that they forcibly took the complainant’s jacket, that they ran when the police approached, although he denied they were armed or that they had injured the victim. During the trial, the defendant denied under oath both his presence on the subway platform, any involvement in the crime, and the existence of "Marcus”. A person named "Vanessa” was allegedly his only companion on the date and time of the crime, but he claimed to have no knowledge of her last name or whereabouts. These contradictory details established beyond a reasonable doubt that not only was the defendant guilty of robbery, as the jury found, but he is also guilty of flagrant perjury in the proceedings against him since he falsely testified under oath about material relevant adjudicative facts.
In addition, under oath he also accused his first assigned attorney of suborning perjury by advising him to testify falsely before the Grand Jury. This pattern of perjury, slander and manipulation shows beyond a reasonable doubt that defendant is a person without scruples who will miss no opportunity to injure another’s person or reputation if it suits his self-centered purposes. His prospects for rehabilitation are unfortunately dim. This court has considered the seriousness of the crime, the overwhelming strength of the case against defendant, the fact that weapons were used, that an accomplice was involved, the probation report, and the defendant’s history and character as evidenced throughout these proceedings. The court has also considered the defendant’s youth and the absence of any prior criminal record. This body of information would be the basis for this court’s imposition of a sentence of three to nine years. However, enhancement is *97 warranted because of defendant’s wilful and flagrant perjury at trial concerning material and relevant adjudicative facts.
Accordingly, the court imposes an indeterminate sentence of 4 to 12 years.
[Portions of opinion omitted for purposes of publication.]

. This court, pretrial, had ruled the defendant’s Grand Jury statements admissible. Trial counsel moved in limine to preclude the admission at trial of defendant’s Grand Jury testimony on the ground that it was involuntary as psychologically coerced by his first assigned attorney. The court, after a hearing, found defendant’s Grand Jury testimony voluntary and denied counsel’s motion.

. Asterisks indicate discussion that appears in this court’s earlier decision in People v Marchese (160 Misc 2d 212 [Sup Ct, Bronx County 1994]) omitted for purposes of publication.

. Citations have been omitted for publication and are set forth in People v Marchese (supra) (n 2, supra).

. Louisiana: State v Smith, 407 So 2d 652, 658 (La 1981); Massachusetts: Commonwealth v Coleman, 390 Mass 797, 461 NE2d 157 (1984); North Carolina: State v Vandiver, 321 NC 570, 364 SE2d 373 (1988), overruling State v Thompson, 310 NC 209, 311 SE2d 866 (1984).

. Hernandez v State, 446 So 2d 235, 236 (Fla 1984) (followed United States v Grayson, supra); cf., Everage v State, 504 So 2d 1255, 1258 (Fla 1986), reh denied 508 So 2d 13 (Fla 1987); City of Daytona Beach v Del Percio, 476 So 2d 197 (Fla 1985) (refused to follow United States v Grayson under determinate sentencing statute).